## UNITED STATES *v.* LINDSAY ET AL.

No. 94.  Argued December 1-2, 1953.—Decided January 18, 1954.

*Paul A. Sweeney* argued the cause for the United States.  With him on the brief were *Acting Solicitor General Stern, Assistant Attorney General Burger* and *Melvin Richter.*

*Edward C. Park* argued the cause and filed a brief for respondents.

MR. JUSTICE BLACK delivered the opinion of the Court.

On February 29, 1952, the United States filed the complaint in this case against Lindsay and the other respondents alleging that on February 26, 1945, Lindsay had delivered damaged wool to the Government in violation of an agreement with the Commodity Credit Corporation, a wholly owned corporate agency of the United States.  The defendants moved to dismiss on the ground that the Government's seven year old claim was barred by the six year time limit in § 4 (c) of a 1948 Act as amended.[1]  That section provides that "No suit by or

---

[1] 62 Stat. 1070, as amended, 63 Stat. 154, 156; 15 U. S. C. (Supp. V) § 714b (c).

against the Corporation shall be allowed unless . . . it shall have been brought within six years after the right accrued on which suit is brought . . . ." Holding that the 1952 suit was barred because the right to sue had "accrued" in 1945 when the damaged wool was delivered, the District Court dismissed the case. 105 F. Supp. 467. The Court of Appeals for the First Circuit affirmed on the same ground. 202 F. 2d 239. However, the Court of Appeals for the Sixth Circuit has held that a Government claim arising prior to the 1948 Act "accrued" not when the suit arose but when the Act became effective. *Field Packing Co.* v. *United States,* 197 F. 2d 329. This conflict among the circuits as to the statutory meaning of "accrued" led us to grant certiorari. 346 U. S. 810. The question here is whether Government claims growing out of the Corporation's transactions prior to the Act "accrued" on the date a right to sue came into existence or on the date the Act became effective.

In common parlance a right accrues when it comes into existence as the Government's claim against Lindsay did in 1945. Giving "accrued" its normal meaning would therefore bar all claims not sued on within six years from the date they arose whether they came into existence before or after passage of the Act. The Government admits that the normal meaning of "accrued" controls when the 1948 Act is applied prospectively, that is, to claims arising after the Act's effective date. But construing the Act in a way that requires its six year limitation period to begin before 1948 gives the law a retroactive effect, shortening the time for suit on some prior claims and summarily cutting off others. To prevent retroactivity we are urged to depart from the normal meaning of "accrued" when § 4 (c) is applied to preexisting claims. This suggested departure is no minor one. We are asked to read the words "six years after

the right accrued" as though Congress intended to say "six years after the effective date of the Act when it is applied to pre-existing causes of action." Precedents are cited in which, to avoid retroactive barring of suits, courts have refused to give "accrued" its normal meaning and have instead given it a special meaning—the date a new statute of limitations becomes effective. In effect, it is argued that these court decisions have made "accrued" a word of art when used in such statutes. Therefore, we are asked to hold that Congress used "accrued" in § 4 (c) with this special meaning.

It is true that courts have sometimes given "accrued" the meaning the Government here suggests, but we are unable to agree that the word has thereby taken on an established technical meaning which Congress must have had in mind when it used "accrued" in this Act. The legislative history fails to show that such a meaning was suggested to Congress before the Act was passed. Moreover, many of the decisions that gave "accrued" this special meaning did so to avoid possible constitutional questions should the statutes be interpreted in a way that would destroy private rights. See, *e. g., Sohn* v. *Waterson,* 17 Wall. 596. But no constitutional question is raised by applying this six year time limit to pre-existing claims of the Government. Congress has unquestioned power to bar recovery on Government claims if it sees fit. And we agree with the court below that we need not now decide whether § 4 (c) can be applied to pre-existing claims brought by private persons against the Government. But see *Lynch* v. *United States,* 292 U. S. 571, 581; *Cummings* v. *Deutsche Bank,* 300 U. S. 115, 119; *Addison* v. *Huron Stevedoring Corp.,* 204 F. 2d 88, 91–92.

The Government also urges that quite apart from constitutional considerations there are strong reasons why courts should, whenever possible, construe statutes so as

to avoid retroactivity. Cases are cited in which particular provisions have been deemed so inequitable and unfair when applied retrospectively that this Court has refused to impute to law-making bodies a purpose to bring about such results.[2] But we cannot say that any consequences of retroactive application of the time limit here call on us to hold that Congress did not intend this statute to take effect according to the natural meaning of its words. The Government has used the Commodity Credit Corporation in business transactions since 1933. Probably many claims have accrued in the intervening years. Maybe others, like this one, are for comparatively small amounts. All, whether large or small, could have been sued on as they arose. We think that Congress might well have believed it wise to bar all stale claims by the Government against its agents and others who dealt with it in the past. For and against such a view arguments can be made that are based on common notions of fairness and justice. In this situation it seems better to leave this statutory problem with Congress rather than for us to stretch the word "accrued" beyond its ordinary meaning. Cf. *Chase Securities Corp.* v. *Donaldson,* 325 U. S. 304, 316.

*Affirmed.*

MR. JUSTICE REED, dissenting.

An emphasis by dissent upon the Court's departure from precedents of statutory construction will not be useless if it arouses the attention of statutory draftsmen

---

[2] *United States* v. *Heth,* 3 Cranch 399; *Claridge Apartments Co.* v. *Commissioner,* 323 U. S. 141; *Hassett* v. *Welch,* 303 U. S. 303; *Brewster* v. *Gage,* 280 U. S. 327; *United States* v. *Magnolia Co.,* 276 U. S. 160; *United States* v. *St. Louis, S. F. & T. R. Co.,* 270 U. S. 1; *Shwab* v. *Doyle,* 258 U. S. 529; *Union Pacific R. Co.* v. *Laramie Stock Yards Co.,* 231 U. S. 190; *United States Fidelity & Guaranty Co.* v. *Struthers Wells Co.,* 209 U. S. 306; *Lewis* v. *Lewis,* 7 How. 776.

to the necessity of more explicit language to protect government claims.

Prior to the passage of the Act in question, a Delaware corporation of the same name as the federal agency created by the Commodity Credit Corporation Charter Act of 1948 existed and operated. 15 U. S. C. (Supp. III) § 713. It had claims and obligations which were unaffected by their transfer to the present corporation by the Charter Act. The earlier Delaware corporation was a wholly owned agency of the United States without statutory limitation, state or federal, on its right to sue upon its claims. *United States* v. *Summerlin*, 310 U. S. 414, and cases cited. Therefore, up to the time of the enactment of § 4 (c), 15 U. S. C. (Supp. III) § 714b (c), there was no compelling reason, beyond the desire for prompt and proper administration, for the United States to file its suits.

As the corporation had played a major part since its organization in 1933 in the purchase, storage and financing of American agricultural products, large claims had accumulated in its favor and against it over the years. S. Rep. No. 1022, 80th Cong., 2d Sess. If the problem here presented was *res integra,* the existence of old claims, not then barred by limitation, would lead me to interpret the words, "brought within six years after the right accrued,"* as prospective only to avoid imputing to Congress unreasonable and arbitrary destruction of valid claims for and against the corporation. This conclusion would follow from the principle that statutes of limitation "must receive a strict construction in favor of the Government." *DuPont de Nemours & Co.* v. *Davis,* 264 U. S. 456, 462; *Independent Coal Co.* v. *United States,* 274 U. S. 640, 650.

---

*It was four years in the 1948 Act, 62 Stat. 1070.

Other principles, it seems to me, necessitate this conclusion. Senator Aiken, Chairman of the subcommittee in charge of the bill, its floor manager and the senior Senate conferee, recorded his view in a statement published after the Congress adjourned.

> "With respect to claims by the Corporation, the 4-year period of limitations will not begin to run on claims of the Delaware Corporation transferred to the Federal Corporation until June 30, 1948, the effective date of the new charter." 94 Cong. Rec. A4409.

The precedents in this Court on the interpretation of statutes establishing limitations by the definition of "accrued" without exception give the word prospective meaning. See, *e. g., United States* v. *St. Louis, S. F. & T. R. Co.,* 270 U. S. 1; *Fullerton-Krueger Co.* v. *Northern Pacific R. Co.,* 266 U. S. 435; *Sohn* v. *Waterson,* 17 Wall. 596; *Lewis* v. *Lewis,* 7 How. 776.

In the light of these purposes and precedents, viewed in the setting of damage to and pilferage of stored crops, the judgment of the Court of Appeals should be reversed.