216 F.2d 241
 UNITED STATES of America, Appellant,
v.
ARKANSAS MILLS, a Partnership composed of Bert G. Dickey, John A. Cooper, and Robert N. Archer; Arkansas Mills, a Partnership composed of Bert G. Dickey and Robert N. Archer; Bert G. Dickey, John A. Cooper, and Robert N. Archer, individually, Appellees.
 No. 15085.
 United States Court of Appeals, Eighth Circuit.
 October 28, 1954.
 
 Neil Brooks, Associate Solicitor, U. S. Dept. of Agriculture, Washington, D. C. (Osro Cobb, U. S. Atty., Dan P. Chisholm, Little Rock, Ark., Howard B. Pickard, Donald A. Campbell, U. S. Dept. of Agriculture, Washington, D. C., on the brief), for appellant.
 Leon B. Catlett, Little Rock, Ark. (Catlett & Henderson, Little Rock, Ark., on the brief), for appellees.
 Before SANBORN, JOHNSEN, and COLLET, Circuit Judges.
 COLLET, Circuit Judge.
 
 
 1
 This action was filed October 31, 1952, by the United States to recover portions of subsidies paid defendants during 1946. A motion to dismiss the complaint was sustained on the ground that the government's claim was barred by the statute of limitations. From the judgment of dismissal this appeal is taken.
 
 
 2
 Defendants and their predecessors were dealers in and processors of soybeans. About September 25, 1945, they entered into a "1945 Soybean Program Processor Contract" with the Commodity Credit Corporation, a well known government agency. The contract was formulated to effectuate the then existing Stabilization Program of the United States Government. The objective of that program, insofar as material to the transactions involved in this controversy, was to insure the receipt by the producer of soybeans of the support price assured the producer by the government as an incentive to production of the commodity, to insure a reasonable margin of profit to the purchaser and processor and to hold down the sale price of the commodity to the consumer to the ceiling price fixed for soybeans, and products thereof, by the Office of Price Administration. That objective was to be accomplished by the contract in the following manner: Defendants agreed to purchase soybeans from producers at the support price. The Commodity Credit Corporation (CCC) agreed to purchase from defendants all soybeans so purchased at the price paid by defendants and to resell them to defendants at a price sufficiently lower than that price which would enable defendants to process and resell them to consumers at the OPA ceiling prices and realize a reasonable profit. The subsidy, consisting of the difference between the price paid by CCC and the lower price at which the soybeans were sold back to defendants, was in this manner paid by the CCC on behalf of the Government. The contract further provided that in the event the OPA ceiling prices should be increased at any time, thereby permitting defendants to sell to consumers at a higher price than was contemplated at the time CCC sold to them, in order to avoid the resulting excessive or windfall profit to defendants, defendants should repay to CCC the amount of any OPA ceiling price increase on all soybeans in defendants' hands at the time of the increase in OPA ceiling prices. In the event the OPA ceiling price was decreased, payment of the amount of the decrease was to be made to defendants by CCC on the same basis. The contract further provided that defendants should keep accurate records of all transactions incident to the contract and that those records should be available to CCC for audit and inspection at any time prior to December 31, 1947. The period of time covered by the contract ended October 10, 1946.
 
 
 3
 During the period from January 1, 1946, to April 25, 1946, defendants, called "the processor" in the contract and in the complaint, purchased from producers, sold to CCC and repurchased from CCC 272,396.57 bushels of soybeans and claimed from CCC on that quantity subsidies in the total amount of $97,007.56, which was paid. That sum represents the total amount paid as a subsidy during the entire period of the contract. On May 13, 1946, the OPA ceiling or maximum price for soybean meal was increased $14.00 per ton. The resulting adjustment under the contract amounted to $0.3336 per bushel. That amount per bushel should, under the contract, have been repaid by defendants to CCC. The time when such payment was to be made is fixed by the contract in the following language:
 
 
 4
 "(d) Maximum Price Adjustment. Payment of any amount owing by the Processor to Commodity under Section 10(b) hereof shall be made at such times and shall be accompanied by such documents as Commodity may prescribe. Payment of any amount owing by Commodity to the Processor pursuant to Section 10(b) shall be made upon the submission to Commodity of such documents as Commodity may prescribe."
 
 
 5
 June 6, 1946, CCC requested defendants to report the amount of soybean meal and soybeans on hand on May 13, 1946. June 10, 1946, defendants reported that they had on hand 83,218 bushels on May 13, 1946, which had been repurchased from CCC and paid CCC $6,440.00 as the subsidy refund provided for in the contract. The complaint states that later defendants advised CCC that the report as to quantity was erroneous, but no corrected report was ever made.
 
 
 6
 It is alleged that defendants agreed to sell to CCC and repurchase from it all soybeans purchased by defendants from producers, that defendants purchased 7,248.79 bushels which it did not report or sell to CCC, that it had that amount on hand at the time the May 13, 1946, ceiling price went into effect, with the result that defendants owed CCC $1,327.98 subsidy refund on this unreported quantity.
 
 
 7
 The contract provided that liquidated damages of $3.00 per ton should be paid CCC on all soybean products sold by defendants in excess of the OPA ceiling prices. It is alleged that 1,026.10 tons of such products were sold by defendants at prices in excess of the OPA ceiling prices, on account of which liquidated damages in the amount of $3,078.30 were alleged to be due CCC.
 
 
 8
 It is alleged that during the months of August, September, October, and November, 1947, CCC undertook to make an audit of defendants' books and records but that the records were found to be "inadequate, fragmentary and incomplete so as to be totally deficient" under the provision of the contract requiring the keeping of proper records. It was further alleged that CCC "required from defendants monthly crushing reports" which were never submitted. Because the cause was determined on a motion to dismiss, the facts must be and have been taken from the complaint.
 
 
 9
 The complaint was in four counts. Count One sought recovery of all subsidy payments made, upon the theory that defendants' failure to keep adequate books and records and make them available to CCC entitled CCC "to cancel and rescind the contract and to recover judgment by way of restitution, or money had and received, the total amount of subsidy paid," less the payment by defendants of the $6,440.00. Count Two alleges that instead of 83,218 bushels of soybeans in the hands of defendants on May 13, 1946, as they reported, there was actually on hand as shown by their books 93,148.41 bushels, upon which a subsidy refund of $31,074.31 was due. Recovery was sought for the difference between that amount and the $6,440.00 paid, or $24,634.31. Count Three sought recovery for subsidy refund of $1,327.98 on the alleged 7,248.79 bushels of unreported soybeans on hand subject to the May 13, 1946, ceiling price adjustment. Count Four sought recovery of the liquidated damages heretofore referred to.
 
 
 10
 The plea of the statute of limitations was sustained upon the authority of United States v. Lindsay, 346 U.S. 568, 74 S.Ct. 287. The pertinent portion of the statute is as follows:
 
 
 11
 § 714b(c) "* * * No suit by or against the Corporation [Commodity Credit Corporation] shall be allowed unless (1) it shall have been brought within six years after the right accrued on which suit is brought, * * *." 15 U.S.C.A. § 714b(c).
 
 
 12
 The question determined expressly in the Lindsay case was whether the term "accrued" as used in § 714b(c) should be construed to mean when the right to sue accrued or the date when the Act became effective. The question now presented is when the right to sue accrued.
 
 
 13
 The government contends that its rights under the contract "accrued" in November, 1947, when defendants breached the contract by failing to submit on request of the CCC accurate books and records. It is argued that since CCC had until December 31, 1947, to examine the books and did not call for them until during the period from August to November, 1947, the breach of the agreement to produce accurate books and records did not occur until then. But that was not the gravamen of the contract. The contract was that defendants should repay such portion of the subsidy as the OPA ceiling price increase required under the formula agreed upon. That obligation became complete on May 13, 1946. The right of the government to enforce that obligation accrued on May 13, 1946. The government had six years from that time to bring an action to recover the repayments. But at the end of six years, thereafter that right was barred.
 
 
 14
 Nor can the theory that because of defendants' breach in November, 1947, in failing to submit accurate records, the government had the right to rescind the contract and sue for money had and received, be applied to permit a recovery under Count One. If it be assumed that the failure to keep and submit accurate records furnished adequate grounds for rescission, it is well established that a prerequisite to cancellation and rescission and recovery of the consideration as money had and received is the prompt restoration, or at least an offer of restoration, of the other party to his previous position. Neither was alleged in this instance.
 
 
 15
 And if it could be said that the right on which the suit was brought was not the right to the repayment of the subsidy but the right to have kept accurate books and records, the breach of that right accrued when the records were not kept properly and not when the auditors discovered that dereliction.
 
 
 16
 It cannot be true that the agreement on the part of defendants to submit such information and make such reports as the CCC might from time to time request can furnish the basis for recovery on Count One. This is not an action for damages for failure to submit records. And if it could be so construed, no damages resulting from such failure are alleged. The provision of the contract by which defendants agreed to furnish CCC information and reports was merely incidental to the obligation to refund portions of the subsidy payments and to aid CCC in arriving at the proper amount. It is not the right on which this suit is brought, within the meaning of § 714b(c).
 
 
 17
 The government presents the argument that even if the breach of contract upon which the action is based occurred more than six years before the suit was brought, the breach was concealed by defendants and the statute of limitations did not commence to run until the breach was discovered. Under some circumstances concealment will prevent the statute from running. But no concealment was alleged. On the contrary, the complaint alleges that defendants furnished such records as they had on request. The criticism directed to defendants is that they did not keep proper records and submitted a report which defendants later advised CCC was erroneous. There is no allegation that anything defendants did or failed to do was concealed. The complaint showed on its face that the rights asserted under Count One were barred. The government stood on that complaint. The trial court properly sustained the plea of the statute of limitations.
 
 
 18
 Count Two, which sought recovery for the return of a specific amount of the subsidy said to be due under the May 13, 1946 ceiling price increase was barred for reasons heretofore stated. The same is true of Count Three, which sought repayment of subsidy on additional soybeans alleged to have been in the hands of defendants on October 1, 1946, and subject to the effect of the May 13, 1946, ceiling price increase. Count Four for the recovery of liquidated damages for the alleged sale of soybean products at prices in excess of the OPA ceiling prices during the period between July 1, 1946, and August 31, 1946, is based upon a right which accrued at the latest on August 31, 1946. It, too, was barred. The judgment is affirmed.