**UNITED STATES of America,**

v.

**Harry C. TEMPLETON, Administrator of the Estate of H. M. Templeton, Deceased.**

**Civ. A. No. 1950.**

United States District Court
E. D. Tennessee, S. D.
Oct. 27, 1961.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for plaintiff.

Roberts & Weill, Chattanooga, Tenn., for defendant.

WILSON, Judge.

This is a suit originally filed upon August 25, 1952 by the United States of America against H. M. Templeton for

forfeitures totalling $42,000. The suit as originally filed was brought under Title 31 U.S.C.A. § 231 et seq., the False Claims Act, it being alleged that the defendant had obtained 21 separate loans upon cotton from the Commodity Credit Corporation when he was not a producer of the cotton or a person authorized to obtain such a loan under the law. The defendant filed an answer under date of July 14, 1953 generally claiming that he was entitled to make the loans and that the loans were properly made under all applicable laws and regulations. Thereafter the case was continued from time to time upon motion and medical statements relating to the health of the defendant. The defendant died upon March 6, 1960 and by order entered upon July 8, 1960 Harry C. Templeton, as administrator of the estate, was substituted as the party defendant. Upon August 8, 1960 the plaintiff filed an amended complaint claiming losses totalling $13,738.68 upon cotton loans to the decedent, these losses alleged to have been realized on or about June 5, 1956 upon the sale of the cotton and after payment of intervening storage and other charges. In the amended complaint the plaintiff contends that it is entitled to recover these losses under Title 15 U.S.C.A. § 714 et seq., the Commodity Credit Corporation Act. By a second count in the amended complaint a loss of $554.94 is claimed upon 22 bales, being the cotton covered by the 21 loans originally alleged as the basis for the forfeitture claim, this being claimed as also due under the provision of the False Claims Act allowing double damages in addition to the forfeitures originally sued upon. Among other matters set forth in the answer, which was filed upon October 7, 1960, it is contended that the complaint as amended fails to state a cause of action upon which relief may be granted and that the statute of limitations has run as to each of the claims set forth in the amended complaint.

Upon the pre-trial hearing it appeared that legal issues were raised by the defendant's answer which might be determinative of the lawsuit.

In the first place, it is contended that the forfeiture originally sued upon is no longer at issue under the pleadings, the plaintiff having abandoned the same upon the filing of the amended complaint. Although there is language in the motion to amend the complaint requesting that "the complaint herein be amended by substituting in lieu thereof" the amended complaint, reference to the allegations in the original complaint is made in paragraphs 14 and 15 of the amended complaint. In addition to the items of damage alleged in the first and second counts of the amended complaint, the plaintiff demands judgment for "such forfeitures as may be applicable under 31 U.S.C. 231." In the case of United States v. Rainwater, 8 Cir., 244 F.2d 27, 28, affirmed 356 U.S. 590, 78 S.Ct. 946, 2 L.Ed.2d 996, the Court, in construing a complaint filed under the False Claims Act, held that a prayer " 'for the amounts provided for in 31 U.S.C. 231' " was sufficient to authorize recovery of both damages and forfeiture. Moreover, at the time of this hearing the plaintiff moved the Court for permission to further amend the amended complaint so as to specifically incorporate and adopt therein the original complaint and it is the opinion of the Court that the motion should be allowed. The first issue of law is therefore resolved.

It is next contended by the defendant that as a matter of law the forfeitures sued upon are in the nature of penalties and that these penalties did not survive the death of H. M. Templeton.

Among other matters, Title 31 U.S.C.A. § 231 provides that persons making false claims against any agency of the United States Government "shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit."

It is well established that a cause of action for recovery of a penalty does

not survive the death of the alleged wrongdoer. 1 Am.Jur., Abatement and Revival, Sec. 128. The issue therefore presents itself as to whether the forfeiture provided for in the False Claims Act is a penalty which would not survive the death of H. M. Templeton or whether it is a civil restitution which would survive such death.

It appears unto the Court that the forfeiture provision of the False Claims Act is penal in nature. In fact it would appear that, as stated in the case of United States ex rel. Brensilber v. Bausch & Lomb Optical Co., 2 Cir., 131 F.2d 545, 547, it is "not only penal, but drastically penal." However the Court feels constrained to follow the ruling of the United States Supreme Court in the case of United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, as being the controlling authority upon this subject. In this case the Court held that the forfeiture provision of the False Claims Act was a civil sanction and remedial only, do[ing no] more "than afford the government complete indemnity for the injuries done it." 317 U.S. at page 549 et seq., 63 S.Ct. at page 387.

It is the opinion of the Court that the Hess case remains the controlling authority upon this subject, despite the subsequent action of the Supreme Court in affirming the case of United States ex rel. Brensilber v. Bausch & Lomb Optical Co., cited and quoted from above as stating what this Court feels should be the law in this regard. The action of the Supreme Court in affirming the Bausch & Lomb Optical Co. case was under such circumstances as to leave the Hess case the controlling authority. The Bausch & Lomb Optical Co. case did hold, as quoted above and as contended by the defendant, that the forfeiture provision of the False Claims Act was penal in nature. This decision was rendered, however, on November 5, 1942 by the Circuit Court of Appeals, Second Circuit. The decision by the Supreme Court in the case of United States ex rel. Marcus v. Hess was rendered on January 18, 1943. Thereafter the Bausch & Lomb Optical Co. case was affirmed by the Supreme Court upon November 8, 1943 in 320 U.S. 711, 64 S.Ct. 187, 88 L.Ed. 417. This was a Per Curiam decision only and the judgment was affirmed by an equally divided court.

■ According to the weight of authority, the judgment or decree of a lower court, affirmed on appeal by an evenly divided court, while conclusive and binding upon the parties, is not a judgment of the appellate court in support of which the rule of stare decisis can be invoked. 14 Am.Jur., Courts, Sec. 81. This is also the rule followed by the United States Supreme Court. See United States v. Pink, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796.

■ Therefore the rule laid down in the Hess case remains the controlling law in holding that the forfeiture provided for in the False Claims Act is not penal in nature.

Moreover, the Court feels further constrained to follow the rule in the Hess case in view of the decision of the United States Supreme Court in the case of Rex Trailer Co., Inc. v. United States, 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149. There the Surplus Property Act was involved, but the forfeiture provisions were identical to the forfeiture provision in the False Claims Act. The Court held that the forfeiture was not penal in nature. See also United States v. Grannis, 4 Cir., 172 F.2d 507 and United States v. Posner, 3 Cir., 269 F.2d 742.

The only remaining questions which may be disposed of at this time arise from the defendant's contention that the Government's action is barred by the applicable statutes of limitation.

Although the first count is based upon the Commodity Credit Corporation Act, 15 U.S.C.A. § 714 et seq., and the second count is based upon the False Claims Act, 31 U.S.C.A. § 231 et seq., and different statutes of limitation are therefore applicable to these respective counts, there is a common problem relating to both counts that must be considered first before considering the respective statutes of limitations involved. That problem is whether or not the amendments made upon

August 8, 1960 relate back to the date of the original complaint, which was filed upon August 25, 1952. If they do so relate back, it is clear that neither count would be barred by the applicable limitation.

■ The general rule in this regard is well settled that an amendment which does not introduce a new cause of action, but which merely restates in a different form the cause of action originally pleaded, relates back to the commencement of the action for the purpose of applying the statute of limitations. 34 Am.Jur., Limitation of Actions, Sec. 260; Hoveland v. Farmers' State Bank of Christine, 8 Cir., 10 F.2d 478; DeFranco v. United States, D.C., 18 F.R.D. 156. The problem of determining what is a "new cause of action" however can itself be quite difficult and various tests have been devised for determining whether the original and the amended pleadings are the same cause of action, including whether the same evidence is involved, whether res adjudicata would apply, whether there is a departure, and whether the subject matter of the action is wholly within the lis pendens of the original suit. 34 Am.Jur., Limitation of Actions, Sec. 261.

In determining whether the rule of relation back to the date of the original pleading would apply, some courts, instead of referring to "a new cause of action" refer to "new demands", "substantial change in the cause of action", "new matter" and "new claim" and treat these as either being synonymous with a new cause of action or an extension of the rule which would preclude such matters from relating back for the purpose of the application of the statute of limitations. 34 Am.Jur., Limitation of Actions, Sec. 261 et seq.

The federal rule in this regard is covered by Rule 15(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides:

"(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

■ The test then is whether the amendment arose out of the "conduct, transaction, or occurrence" set forth in the original pleading. Regardless of what the rule may be in other jurisdictions, the rule to be followed in federal courts is that if there is an identity between the amendment and the original complaint with regard to the general wrong suffered and with regard to the general conduct causing such wrong, then the amendment shall relate back and the statute of limitations would not avail to preclude a hearing on the merits.

■ Applying this rule to the first count of the amendment it appears that there is not such an identity of the general wrong alleged to have been suffered or of the general conduct causing such wrong as to permit the amendment to relate back under Rule 15(c). The original complaint was based upon a claim for forfeiture under the False Claims Act. The first count of the amendment is based upon a claim for damages under the Commodity Credit Corporation Act. The original complaint related to 21 notes alleged to have been falsely and fraudulently presented upon 22 bales of cotton. The first count of the amendment is based upon alleged improper loans upon 524 bales of cotton. The periods of time covered are not identical. Thus the only identity between the first count of the amendment and the original complaint is to the extent that the 22 bales of cotton were included within the 524 bales, and these 22 bales are the specific subject of the second count of the amendment.

When the defendant was placed on notice in 1952 that he was charged with wrongful action relating to 22 bales of cotton, he could not be charged thereby with being placed on notice that he might be called upon eight years later to defend himself from claims of wrongful action relating to 502 other bales of cotton. The long passage of time would make unavailable to the defendant evidence that

he might otherwise have had, as is amply demonstrated by the death of the defendant himself. To avoid this consequence is the very reason of the enactment of statutes of limitation.

It is therefore the opinion of the Court that there is a diversity, rather than an identity, with regard to the wrong suffered and the conduct causing such wrong as between the first count of the amendment and the original complaint. The time of the amendment will therefore not relate back for the purpose of applying the statute of limitations, and this count must be tested as of the date of the filing of the amendment. Before pursuing this matter further, however, let us look to the second count of the amendment.

With regard to the second count of the amendment, a different situation exists. This count is based upon the False Claims Act, which provides in Section 231, Title 31 U.S.C.A., that a person found to be guilty of making a false claim against the Government:

> "shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit."

The original complaint in the present case sued specifically for the forfeiture of $2,000 per transaction, and for nothing else. On the other hand, the amended complaint, filed eight years after the original complaint and eleven years after the false claims complained of, sues for double damages "plus such forfeitures as may be allowable under 31 U.S.C. 231."

The question is whether the amended complaint's claim for damages, as opposed to forfeiture, is to be permitted as merely a claim for another item of damages growing from the original transaction, or whether it is to be denied as a new cause of action which is barred by the applicable statute of limitations.

As between the second count of the amendment and the original complaint there is an identity of the general wrong suffered and of the general conduct causing the same, namely the wrongful procuring of 21 loans by the defendant upon 22 bales of cotton during the fall of 1949. The only lack of identity is with reference to the damages sought, the original complaint seeking a forfeiture upon each of the loans and the amendment seeking double damages with reference to the same transaction. Both of these remedies are specifically provided for in the same section of the False Claims Act as stated above. It is further specifically provided therein that "such forfeiture and damages shall be sued for in the same suit." Both arose out of the same "conduct, transaction or occurrence". In essence, the second count of the amendment seeks only an amplification of the damages claimed to have arisen out of the transaction complained of in the original pleading. The general rule in this regard is that an amendment increasing the amount of damages claimed or merely varying the prayer for relief does not state a new cause of action and may be allowed after the statute of limitations has run. 34 Am.Jur., Limitation of Actions, Sec. 265.

It is therefore the opinion of the Court that the second count of the amendment would relate back to the time of the filing of the original complaint upon August 25, 1952. The statute of limitations with regard to the False Claims Act is six years. 31 U.S.C.A. § 235. The motion of the defendant for summary judgment as to the second count of the amended complaint is therefore overruled.

There still remains to be disposed of the question of whether the statute of limitations has run as to the first count of the amended complaint, considering that it was filed upon August 8, 1960 and does not relate back to the filing of the original complaint. It is contended by the Government that the statute did not begin to run until the realization of the loss on June 5, 1956.

 The limitation applicable to the first count is contained in 15 U.S.C.A. § 714b(c) where it is provided:

"No suit by or against the (Commodity Credit) Corporation shall be allowed unless * * * it shall have been brought within six years after the right accrued on which suit is brought * * *."

Thus the problem presented is that of determining when the Government's cause of action "accrued." In this connection, the Supreme Court has, in construing the foregoing provision, declared that the word "accrued" must be given its usual interpretation as meaning "came into existence." United States v. Lindsay, 346 U.S. 568, 74 S.Ct. 287, 98 L.Ed. 300.

 The promissory notes upon which the Government now sues in the first count provide that the Commodity Credit Corporation shall look solely to the cotton for satisfaction of the loan, and that there shall be no personal liability on the part of the maker unless fraud or a false claim was involved in the making of the note, in which event the maker "shall be and remain personally liable * * * for the payment of the loan, plus interest and charges * * *, and for the amount of any other loss or liability incurred by any holder of the note as a result of such fraudulent representation."

No concealment of the Government's cause of action being alleged, it would seem that the right of action, which exists only if there was fraud or a false claim in the making of the note, "came into existence" if at all at the time of the making of the note, or, at the very latest, upon the due date of the note, both of which dates preceded by more than six years the filing of the amended complaint. Of course, it might be argued that, since a showing of fraud is a prerequisite to recovery, this is an action *for* fraud against which the statute does not begin to run until discovery of the fraud. See 34 Am.Jur., Limitation of Actions, Sec. 163 et seq. The Court is not required to determine this question, however, because the date of the discovery of the alleged

fraud likewise preceded the filing of the amended complaint by more than six years, the original complaint having been filed upon August 25, 1952.

The question, therefore, is whether the period of limitations began to run upon the liquidation or realization by the Government of its loss, in 1956, on the one hand, or upon any one of the above-mentioned earlier dates, on the other. The Court is of the opinion that the statute began to run upon one or another of the earlier dates rather than upon the realization of the loss by the Government. The fact that the Government may not have ascertained its loss at the time when its right of action accrued is a matter within its control and is a practical difficulty which cannot alter the fact that the right of action did accrue at that time. Similar problems can arise in all types of cases, from personal injury actions to suits upon any kind of secured note. In fact, it is probable that in the majority of cases the plaintiffs may not have ascertained their damages at the instant when their causes of action arose, but they, and the Government as well, must make their claim within the applicable period of limitations, and must in any event file their suits before the expiration of that period.

The general rule is stated in 34 Am. Jur., Limitation of Actions, Sec. 116, as follows:

"It is a firmly established rule that with certain exceptions, such as in the case of covenants and indemnity contracts, the occurrence of an act or omission, whether it is a breach of contract or of duty, whereby one sustains a direct injury, however slight, starts the statute of limitations running against the right to maintain an action. It is sufficient if nominal damages are recoverable for the breach or for the wrong, and it is unimportant that the actual or substantial damage is not discovered or does not occur until later."

The most obvious objection to holding that the statute did not begin to run until the Government actually realized its loss, is that such a holding would place control

of the statute in the hands of the party against whom it is designed to operate, with the result that the Government could, if it wished, delay indefinitely the beginning of the statutory period. Thus it is stated in 34 Am.Jur., Limitation of Actions, Sec. 116:

"It is not the policy of the law to permit a party against whom the statute runs to defeat its operation by neglecting to do an act which devolves upon him in order to perfect his remedy against another. If this were so, a party would have it in his own power to defeat the purpose of the statute in all cases of this character."

It therefore follows that this cause will stand for trial as to the forfeiture and double damages claimed in the second count of the amended complaint only. An order will be entered accordingly.