UNITED STATES of America ex rel. Robert R. PURCELL, Plaintiff,

v.

MWI CORPORATION et al., Defendants.

Civil Action No. 98–2088 (RMU).

United States District Court, District of Columbia.

March 25, 2003.

Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, against his former employer, MWI Corporation ("MWI"), a manufacturer of industrial pumps. As is its option, the government subsequently intervened, bringing suit on its own accord against MWI and its former president, J. David Eller (collectively, "the defendants"). The defendants now move this court to dismiss all four counts of the government's complaint either as time-barred or as precluded by principles of equity. Because the government's complaint is timely under the relation-back doctrine, the record does not support dismissal of Mr. Eller, and the government may plead alternate theories of liability, the court denies the defendants' motion to dismiss.

Jospeh J. Aronica, Porter, Wright, Morris & Arthur, Catherine Botticelli, Arter & Hadden LLP, Roscoe Conklin Howard, Jr. U.S. Attorney's Office Michael D. Granston, Washington, DC, for plaintiff.

Michael J. Madigan, Akin, Gump, Strauss, Hauer & Feld, L.L.P., for defendant.

Peter R. Kolker, Zuckerman Spaeder, LLP, Vincent Bernard Terlep, Jr., Washington, DC, Catherine M. Rodrigues, Conrad & Scherer, LLP, Fort Lauderdale, FL, for defendant/intervenor-defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

### DENYING THE DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

This *qui tam* action involving pump equipment sales to Nigeria comes back before the court on the defendants' motion to dismiss. Robert Purcell ("the relator") brings this case pursuant to the False

## II. BACKGROUND

### A. Factual Background

According to the government, in the early 1990s MWI arranged to sell irrigation pumps and other equipment to seven Nigerian states. Gov't's Compl. ¶¶ 8, 11. To finance the pump sales, the United States Export–Import Bank ("ExIm") made eight loans totaling $74.3 million to Nigeria in 1992. *Id.* ¶¶ 12–13. MWI received regular payments through a London bank which then was reimbursed by ExIm. *Id.* ¶ 14.

Before ExIm would approve the bank reimbursements, however, it required MWI to submit a "supplier's certificate" certifying that it had not paid any commissions or other payments in connection with the pump sales. *Id.* ¶¶ 15–16. In turn, before the bank would release each payment to MWI, the company had to submit an additional supplier's certificate again certifying that it had not paid commissions or other payments in connection with the pump sales. *Id.* ¶ 17. Accordingly, MWI submitted supplier's certificates to obtain ExIm approval of the bank reimburse-

ments, and submitted 48 additional supplier's certificates for each of its payments from the bank. *Id.* ¶¶ 16, 18. On the supplier's certificates, 43 of which were signed by Mr. Eller, MWI certified that it had not paid any commissions or other payments in connection with the pump sales. *Id.* ¶¶ 19, 21.

The government alleges that these certifications were false. *Id.* ¶¶ 24, 35. Specifically, the government claims that the defendants failed to disclose on the supplier's certificates that they had made $28 million in "excessive, highly irregular" commissions to their Nigerian sales representative to obtain the pump sales. *Id.* ¶¶ 22–27. The defendants allegedly also failed to disclose that their representative subsequently made payments to various Nigerian officials in connection with the pump sales. *Id.* ¶¶ 28–37. Finally, the government contends that Mr. Eller made trips to the Bahamas and Grand Cayman with suitcases containing cash in an effort to move his assets out of the United States. *Id.* ¶¶ 38–43.

### B. Procedural History

On August 28, 1998, the relator filed his complaint ("relator's complaint") alleging false or fraudulent claims under the FCA. In part because the relator's complaint sparked a criminal investigation of the defendants, the government requested and received multiple extensions of time to determine whether it would intervene in the civil action. Defs.' Mot. at 2–3; Gov't's Opp'n at 2–3. On January 28, 2002, the government filed a notice of election to intervene in the case. Gov't's Notice of Election to Intervene. On April 4, 2002,[1] after two further extensions of time, the government filed its complaint ("government's complaint") alleging (1) false or fraudulent claims under the FCA, (2) false

statements under the FCA, (3) unjust enrichment, and (4) payment by mistake. *Id.* ¶¶ 46–56. For relief, the government seeks treble damages and civil penalties under the FCA, common law, and equity. *Id.* ¶¶ 1, 57. On May 28, 2002, citing various statutes of limitations as well as principles of equity, the defendants filed their motion to dismiss the government's complaint for failure to state a claim on which relief may be granted. The court now turns to the defendants' motion to dismiss.

### III. ANALYSIS

### A. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6)

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests. FED.R.CIV.P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. FED.R.CIV.P. 12(b)(6); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The plaintiff need not plead the elements of a prima-facie case in the complaint. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511–14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (holding that a plaintiff in an employment-discrimination case need not establish her prima-facie case in the complaint); *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114 (D.C.Cir.2000). Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that

---

**1.** In the interim, the parties raised and the court resolved several discovery related mat-

ters. *See United States ex rel. Purcell v. MWI Corp.,* 209 F.R.D. 21 (D.D.C.2002).

no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C.Cir.1996). In deciding such a motion, the court must accept all of the complaint's well-pled factual allegations as true and draw all reasonable inferences in the nonmovant's favor. *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. The court need not accept as true legal conclusions cast as factual allegations. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994).

■■■ A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint. *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C.Cir.1998). Because statute of limitations issues often depend on contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint. *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C.Cir. 1996). Rather, the court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred. *Id.; Doe v. Dep't of Justice*, 753 F.2d 1092, 1115 (D.C.Cir.1985). If "no reasonable person could disagree on the date" on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds. *Smith v. Brown & Williamson Tobacco Corp.*, 3 F.Supp.2d 1473, 1475 (D.D.C.1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.*, 890 F.2d 456, 463 n. 11 (D.C.Cir.1989)).

## B. The False Claims Act and the Complaints

The FCA imposes liability for civil penalties and treble damages on any person who submits or causes false claims to be submitted to the federal government. 31 U.S.C. § 3729. Under section 3730 of the FCA, a private person—known as the "relator"—may bring an FCA action in the name of the government. *Id.* § 3730(b). The relator must file the complaint *in camera* and under seal, and may not serve it upon the defendant until the court so orders. *Id.* The relator must serve a copy of the complaint on the government, however, which then has 60 days (subject to court-approved extensions of time) to elect to intervene in the case. *Id.* If the government elects to intervene, it has primary responsibility for prosecuting the action and is not bound by the actions of the relator, who may continue as a party to the action. *Id.* § 3730(c). If the government chooses not to intervene, the relator has the right to conduct the action. *Id.*

Section 3731(b) of the FCA establishes a two-pronged statute of limitations for FCA actions. 31 U.S.C. § 3731. First, section 3731(b)(1) limits FCA actions to those brought within six years of the date of the FCA violation. *Id.* § 3731(b)(1). Alternatively, section 3731(b)(2) limits FCA actions to those brought within three years of the date "when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act[.]" *Id.* § 3731(b)(2).

For the purposes of the motion to dismiss, the content and filing date of the two complaints are particularly significant, and therefore merit comparison. The relator in this case filed his complaint on August 27, 1998, nearly four years after the defendants submitted the last allegedly false supplier's certificate. Gov't's Compl. Attach. B at 3. In his complaint, the relator names MWI as the sole defendant and seeks damages and civil penalties based on one count that describes several FCA vio-

lations. *Id.* ¶¶ 4, 11–17. Specifically, the relator's complaint describes MWI's pump sales to the seven Nigerian states, the $74 million in ExIm loan guarantees, the allegedly fraudulent supplier's certificates, and the allegedly undisclosed commissions to MWI's sales representative that found their way to various Nigerian officials. *E.g., id.* ¶¶ 11–13, 15–16. The complaint also discusses MWI's increased use of ExIm financing for its Nigerian sales, alleges that MWI attempted to promote sales in Nigeria by creating an artificial need for its equipment, and claims that MWI developed deceptive equipment descriptions to avoid price comparisons with similar goods. *Id.* ¶¶ 23–31, 47–49. Based on all these actions, the sole count of the relator's complaint charges MWI with the FCA violations of knowingly causing the submission of false or fraudulent claims for payment or approval, knowingly making false records or statements to obtain government payment of false or fraudulent claims, and conspiring to defraud the government. *Id.* ¶¶ 50–55. The relator seeks treble damages and civil penalties under the FCA. *Id.* at 24–25.

The government's complaint, filed on April 4, 2002, or nearly eight years after the defendants submitted their last certificate, provides the facts sets forth in Part II.A, *supra.* Gov't's Compl. ¶¶ 11–45. In contrast to the relator's complaint, the government's complaint names both MWI and Mr. Eller as defendants. *Id.* ¶¶ 6–7, 52–56. It also contains not one but four counts relating to the defendants' alleged actions. *Id.* ¶¶ 46–56. Of the four counts,

the first two counts allege the same FCA violations as the relator's complaint: (1) knowingly causing the presentation of false or fraudulent claims for payment or approval, and (2) knowingly making false records and statements to obtain government payment of false or fraudulent claims. *Id.* ¶¶ 46–51. The third and fourth counts ("the equity claims") allege, respectively, that as a result of the defendants' actions the defendants were unjustly enriched and the United States made payments by mistake. *Id.* ¶¶ 52–56. The government seeks treble damages and civil penalties under the FCA, common law, and equity. *Id.* ¶¶ 1, 57.

## C. The Court Denies the Defendants' Motion to Dismiss

Although the parties agree that the relator's complaint falls within the FCA's six-year statute of limitations, they strongly disagree as to whether the claims and defendants contained in the government's complaint likewise qualify. Defs.' Mot. to Dismiss ("Defs.' Mot.") at 6; Opp'n at 7. In addition, the parties differ as to whether the government's equity claims are permissible in light of the remedies already provided by the FCA.[2] Defs.' Mot. at 12–14; Opp'n at 12–15. The court concludes that (1) the government's complaint is timely under the relation-back doctrine, (2) the record does not support dismissal of Mr. Eller, and (3) the government may plead alternate theories of liability. Accordingly, the court denies the defendants' motion to dismiss.

---

**2.** Without elaboration, the defendants initially state that the equity claims "are also barred by the doctrine of laches." Defs.' Mot. at 2. The government responds that the United States is not subject to the defense of laches in enforcing its rights. Opp'n at 11–12 (citing *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940)).

This circuit has adopted the *Summerlin* rule. *Mount Vernon Mortgage Corp. v. United States,* 236 F.2d 724, 725 (D.C.Cir.1956). *But see Nat'l Labor Relations Bd. v. P*I*E Nationwide, Inc.,* 894 F.2d 887, 893–94 (7th Cir. 1990) (concluding that later Supreme Court dictum allows the application of laches to suits by government agencies).

## 1. The Government's Complaint Is Timely Pursuant to Rule 15

The defendants first argue that the government's complaint represents a new action that parallels, rather than amends, the relator's complaint. Defs.' Mot. at 5–10. In support of their argument, the defendants note that the relator's complaint is narrower than the government's complaint because it only charges MWI and only includes FCA claims, but broader because it alleges that MWI created deceptive equipment descriptions. *Id.* at 5–7. The defendants also point out that the government's complaint is entitled "Complaint of the United States," with no reference to amendment. *Id.* at 6. Finally, the defendants state that the relator confirmed the independence of the two complaints by indicating that, notwithstanding the government's complaint, he may press forward with his own action. *Id.* at 7. For all these reasons, the defendants contend that the government's complaint is a new action and consequently is barred by the FCA statute of limitations. *Id.* at 6–7.

The government responds by stating flatly that its complaint amends the relator's complaint, and therefore is timely under the relation-back doctrine. Opp'n at 1, 7–8. Emphasizing the unique nature of *qui tam* actions, the government points out that under the FCA, the relator brings a civil action in the name of the United States, the real party of interest. *Id.* at 4–5. The government argues that consequently, it cannot be viewed as a new party-plaintiff when it elects to intervene, and its complaint must relate back to the date of the relator's complaint. *Id.*

■ Under Federal Rule of Civil Procedure 15(c), a plaintiff may amend its complaint to add a claim or defense when that claim or defense "arose out of the conduct, transaction, or occurrence" set forth in the original pleading. FED. R.CIV.P. 15(c); *United States v. Hicks*, 283 F.3d 380, 388 (D.C.Cir.2002) (discussing the relation-back doctrine). Typically, amendments that build on previously alleged facts will relate back to the original complaint. *Hicks*, 283 F.3d at 388. But "those [amendments] that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously." *Id.* To determine whether amendments should relate back, courts look to see whether the complaint gave the opposing party notice of the new claim. 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRAC. & PROC. CIV. 2d § 1497. If the alteration is "so substantial that it cannot be said that defendant was given adequate notice ... then the amendment will not relate back and will be time barred if the limitations period has expired." *Id.*

■ The court concludes that the government's complaint is timely under the relation-back doctrine. First, the government's complaint in intervention is an amendment of the relator's complaint. *See* Gov't's Mots. for Extensions of Time[3] filed Mar. 18 and 29, 2002 (characterizing the government's to-be-filed complaint as an *amended* complaint); *e.g., United States ex rel. Alsaker v. CentraCare Health Sys., Inc.,* 2002 WL 1285089, at *1 (D.Minn. June 5, 2002) (describing the government's complaint in intervention as an amended complaint); *United States ex rel. Cosens v. Yale–New Haven Hosp.,* 233 F.Supp.2d 319, 325 (D.Conn.2002) (same). As such, the government's complaint may relate back to the date of the relator's complaint

---

**3.** On August 26, 2002, the court granted both motions *nunc pro tunc. Purcell,* 209 F.R.D. at 23 n. 1.

if the government's additional claims arose out of the conduct set forth in the relator's complaint. FED.R.CIV.P. 15(c); *Hicks*, 283 F.3d at 388. Although structured differently, the government's FCA claims are nearly identical in substance to the relator's FCA claim. *Compare* Gov't's Compl. ¶¶ 46–51 *with* Relator's Compl. ¶¶ 50–55. Because the new FCA claims arose out of the same conduct as the original claim, they relate back to the original claim. *United States v. Templeton*, 199 F.Supp. 179, 184 (D.Tenn.1961) (concluding that a new FCA damages claim related back to the original FCA forfeiture claim because both were based on the same wrongful loan procurement).

■ As for the additional equity claims, they arise out of the same alleged failure to disclose on the same supplier's certificates regarding the same set of ExIm loans pertaining to the same pump sales as the FCA claims. Gov't's Compl. ¶¶ 46–56; *cf. United States ex. rel. Ortega v. Columbia Healthcare, Inc.*, 240 F.Supp.2d 8, 14–15 (D.D.C.2003) (refusing to allow relation back of kickback claims to existing false certification claims because the certification claims "involve[d] distinct facts and allegations from the kickback claims"); *Safir v. Blackwell*, 579 F.2d 742, 745 (refusing to allow relation back of FCA claim to existing cargo subsidy claim because the FCA claim was "completely new"). Moreover, the relator's complaint gives the defendants adequate notice of the additional equity claims. *Hicks*, 283 F.3d at 388. In a preview of the payments-by-mistake and unjust-enrichment claims, the relator's complaint refers to the defendants' conduct as having caused the government to pay more that it would have paid absent such conduct, and having allowed the de-

fendants to receive payments that were not merited. *E.g.*, Relator's Compl. ¶¶ 53, 55. The defendants therefore received adequate notice of the equity claims. *Cf. Constr. Interior Sys., Inc. v. Donohoe Cos., Inc.*, 813 F.Supp. 29, 37 (D.D.C.1992) (finding that the original complaint for breach of contract and unjust enrichment did not provide adequate notice of proposed tortious inference claim). Accordingly, the equity claims also relate back. *Hicks*, 283 F.3d at 388.

In sum, because the claims in the government's complaint arise out of the same conduct as the claims in the relator's complaint, and the relator's complaint provided the defendants with adequate notice of the government's claims, the government's complaint relates back to the relator's complaint. As such, the government's complaint falls within the statute of limitations, and is timely.

**2. The Record Does Not Support Dismissal of The Government's Claims Against Defendant Eller**

The defendants contend that even if the relation-back doctrine rescues the government's complaint, the government cannot add Mr. Eller as a defendant. Defs.' Mot. at 10–11. First, the defendants note that Rule 15(c) allows relation-back only for misidentified defendants, and therefore does not apply here. *Id.* at 11; Reply at 4. Second, they argue that without Rule 15's protection, the FCA and other statutes of limitations bar the FCA and equity claims against Mr. Eller. Defs.' Mot. at 11–12.; Reply at 3–5. In response, the government argues that the FCA and other statutes of limitations do not bar the FCA and equity claims against Mr. Eller, and moreover that his dismissal would be premature at this stage in the proceedings.[4] Gov't's Opp'n at 15–19.

---

**4.** The government does not argue that the relation-back doctrine of Rule 15 applies with

regard to Mr. Eller. Gov't's Opp'n at 15–19.

Because Rule 15(c) does not apply where the plaintiff has not alleged a mistake of identification, the government may raise the FCA and equity claims against Mr. Eller only if the relevant statutes of limitations so allow. *Grigsby v. Johnson*, 1996 WL 444052, at *6 (D.D.C. May 14, 1996). Therefore, the question before the court is whether the FCA claims fall within the limitations period set by FCA section 3731(b) and whether the equity claims fall within the limitations period set by 28 U.S.C. § 2415.

As noted, section 3731(b)(2) requires a person to bring an FCA action within three years of the date when "facts material to the right of action are known or reasonably should have been known" by the responsible federal official.[5] 31 U.S.C. § 3731(b)(2). Section 2415, which establishes the limitations periods for actions brought by the United States, requires tort actions to be brought within three years and contract actions to be brought within six years of the date that the right of action first accrues.[6] 28 U.S.C. § 2415(a), (b). The limitations periods of section 2415 are subject to tolling under section 2416(c), which excludes all periods during which "facts material to the right of action are not known and reasonably could not be known" by the responsible federal official. *Id.* § 2416(c).

 Whether the government is barred from bringing the FCA or the equity claims against Mr. Eller therefore turns on when the responsible federal official knew or should have known of the material facts to the action. 31 U.S.C. § 3731(b)(2); 28 U.S.C. §§ 2415, 2416. Because the test for both provisions turns on language that is virtually identical, the court analyzes the two statutes together for the purposes of this motion. *E.g., United States v. Kensington Hosp.*, 1993 WL 21446, at *13 (E.D.Pa. Jan.14, 1993) (describing the common intent behind sections 3731(b)(2) and 2416(c)); *United States v. Tech Refrigeration*, 143 F.Supp.2d 1006, 1010 (N.D.Ill. 2001) (analyzing a section 3731(b)(2) claim by reference to section 2416(c)).

The defendants contend that the date on which the government knew or reasonably should have known of Mr. Eller's alleged role in the supplier's certificate scheme was August 27, 1998, the date that the government was served with the relator's complaint.[7] Reply at 4–5. In support of their argument, the defendants point to references in the relator's complaint that (1) describe Mr. Eller as the current president, chief executive officer, and sole owner of MWI, (2) note his use of ExIm financing, and (3) state that he signed the supplier's certificates. *Id.* at 5 (citing Relator's Compl. ¶¶ 19, 23, 37). The defendants therefore assert that the government should have known of Mr. Eller's role in the alleged scheme as of August 27, 1998. *Id.* Applying the three-year statute

---

**5.** As noted, section 3731(b)(1) also authorizes FCA actions to be brought within six years of the date of the FCA violation. 31 U.S.C. § 3731(b)(1). Because the government does not attempt to argue that the FCA claims were filed within six years of the December 7, 1994 date of submission of the last supplier's certificate, the court does not address the applicability of the six-year window. Gov't's Opp'n at 16.

**6.** The parties dispute whether the equity claims are properly characterized as sounding

in tort or sounding in contract. Gov't's Opp'n at 15–16; Reply at 7. For purposes of this analysis, however, the court need not decide the nature of the equity claims.

**7.** In a footnote, the defendants state that they "can establish that the United States had knowledge of the events asserted in the Complaint even before service of the Relator's Complaint on the Department of Justice," but that for purposes of this motion they will consider the August 27, 1998 date as the last possible event of notice. Defs.' Mot. at 3 n. 2.

of limitations to the FCA and equity claims, the defendants conclude that the government should have filed its FCA and equity claims by August 27, 2001. *Id.* at 5, 8. As the government did not file its claims until April 4, 2002, the defendants contend that the FCA and equity claims are time-barred as to Mr. Eller. *Id.* ·

The government disputes the defendants' contention that it should have known of Mr. Eller's role as of its August 27, 1998 receipt of the relator's complaint. Defs.' Mot. at 15–19. The government contends that the references in the complaint referring to Mr. Eller did not allege that Mr. Eller knowingly approved the alleged commissions, but simply noted that Mr. Eller was MWI's owner, that he was politically active, and that he signed the supplier's certificates. *Id.* at 17. Furthermore, the government contends that even if the relator's complaint had provided detailed allegations of Mr. Eller's involvement, receipt of allegations would not have been enough to trigger the limitations periods of sections 3731 and 2416. *Id.* at 16–17. Rather than put forth an alternate date, the government argues that the date on which it knew or reasonably should have known of Mr. Eller's alleged role in the supplier's certificate scheme is a question of fact that the court should resolve on a motion for summary judgment rather than a motion to dismiss. *Id.* at 16, 19. Therefore, it urges the court not to dismiss the FCA or equity claims against Mr. Eller until after discovery has closed. *Id.* at 19.

Analyzing when the responsible government official knew or should have known facts material to the FCA or equity claims is "a complex factual determination to be made by the district court." *United States v. Hess,* 194 F.3d 1164, 1175 (10th Cir. 1999) (referring to section 2416(c)). At this point, there simply are not enough facts in the record for this court to make that determination. Thus far, the court is aware of two pieces of information: first, that the relator's complaint spurred some sort of criminal investigation of the defendants, and second, that the relator's complaint noted Mr. Eller's company position, political leanings, and signatures on the supplier's certificates. Reply at 4–5; Gov't's Opp'n at 2–3; Relator's Compl. ¶¶ 19, 23, 37. Neither item provides the court with the detail necessary to determine when the "official of the United States charged with responsibility to act in the circumstances" knew or should have known of the facts material to the right of action. 31 U.S.C. § 3731(b)(2); 28 U.S.C. § 2416(c). Accordingly, the court cannot say that the claims are conclusively time-barred. *Firestone,* 76 F.3d at 1209; *Doe,* 753 F.2d at 1115. The court therefore declines to dismiss the FCA and equity claims against Mr. Eller at this point in the proceedings. *Tech Refrigeration,* 143 F.Supp.2d at 1010 (denying a motion to dismiss because on the record before it, the court could not say that the responsible government official knew or should have known of the material facts prior to a certain date).

### 3. The Government May Plead Alternative Theories of Liability

Finally, the defendants argue that the court should dismiss the equity claims of unjust enrichment and payment by mistake because "[i]t is axiomatic that equitable relief is not available when the plaintiff has a complete and adequate remedy at law." Defs.' Mot. at 12–13. According to the defendants, the FCA's treble damages are more than adequate as a remedy because they allow the government to both recoup its losses and punish the defendants. *Id.* at 13. To bolster this argument, the defendants cite to a Supreme

Court decision concluding that FCA damages are "essentially punitive in nature." *Id.* (citing *Vt. Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 784, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000)). They also point to two cases in which the court barred equitable remedies after finding that the FCA damages were an adequate remedy at law. *Id.* at 13–14 (citing *United States v. Hydroaire, Inc.,* 1995 WL 86733, at *6 (N.D.Ill. Feb.27, 1995) and *United States v. Job Res. for the Disabled,* 2000 WL 562444, at *4 (N.D.Ill. May 9, 2000)); Reply at 9. The government counters that pursuant to the federal rules of civil procedure, it may plead alternate theories of recovery. Opp'n at 13. Pointing to cases in which courts have allowed pleadings containing both legal and equitable theories of recovery, the government argues that the courts may exercise simultaneous legal and equitable jurisdiction. *Id.* at 13–14. As for the two cases cited by the defendants, the government views their holdings as incorrect. *Id.* at 14–15.

■ Under Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead alternative theories of liability, regardless of whether such theories are consistent with one another. FED.R.CIV.P. 8(e)(2); *Scott v. District of Columbia,* 101 F.3d 748, 753 (D.C.Cir.1996). A plaintiff may not recover damages, however, on the basis of theories that are inconsistent because one theory precludes the other or the theories are mutually exclusive. *Scott,* 101 F.3d at 753. Accordingly, at the motion-to-dismiss stage, courts in this district and elsewhere have permitted the government to proceed with claims alleging FCA violations as well as claims for unjust enrichment or payment by mistake. *E.g., United States v. Bouchey,* 860 F.Supp. 890, 892–94 (D.D.C.1994); *United States ex rel. Mayman v. Martin Marietta Corp.,* 894 F.Supp. 218, 221, 225 (D.Md.1995); *United States v. Univ. Hosp. at Stony Brook,* 2001 WL 1548797, at *1 & n. 1 (E.D.N.Y. Oct.26, 2001). Some courts, however, have granted motions to dismiss an unjust-enrichment claim in light of the existence of an express contract. *Hydroaire,* 1995 WL 86733, at *6; *United States v. EER Sys. Corp.,* 950 F.Supp. 130, 133 (D.Md.1996).

In this case, the government alleges FCA violations, unjust enrichment, and payment by mistake, and requests alternate forms of relief. Gov't's Compl. ¶¶ 46–56. Specifically, the government requests treble damages and civil penalties under the FCA, *or* a sum equal to the amount by which the defendants were unjustly enriched, *or* a sum equal to the amount which the United States paid by mistake. *Id.* ¶ 57. Although allegations of an express contract may warrant dismissal of an unjust enrichment claim at the motion-to-dismiss stage, that consideration does not appear to be applicable here, as neither party alleges the existence of an express contract. *E.g.,* Opp'n at 14 n. 2; Reply at 3, 6. Because the government may plead alternative theories of liability, the court declines to grant the defendants' motion dismiss the equity claims.[8] *Scott,* 101 F.3d at 753.

## IV. CONCLUSION

For all these reasons, the court denies the defendants' motion to dismiss. An

---

**8.** At this stage, and in light of the Supreme Court's recent decision in *Cook County,* the court also declines to determine whether damages under the FCA represent a "complete and adequate" remedy at law that bars equitable relief in this case. *Cook County, Ill. v. United States ex rel. Chandler,* —— U.S. ——, 123 S.Ct. 1239, 155 L.Ed.2d 247, 2003 WL 890268, at *7 (Mar. 10, 2003) (stressing that notwithstanding the punitive character of treble damages, such damages also have a compensatory side and may be necessary for full recovery).

order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 25th day of March, 2003.