J. Clark POLING, et al., Plaintiffs,

v.

K. HOVNANIAN ENTERPRISES,
et al., Defendants.

Civil No. 99–431.

United States District Court,
D. New Jersey.

May 24, 2000.

J. Clark Poling, Fellsmere, FL, pro se.

John C. Poling, Boca Raton, FL, pro se.

Albert C. Barclay, Jr., Kingston, NJ, for Florence Winston and pro se.

Albert Barclay, III, N.E. Atlanta, GA, pro se.

Robert A. Berns, Patrick J. Galligan, Wilson, Elser, Mskowitz, Edelman & Dicker, LLP, Newark, NJ, Mary Fran Farley, Harris Beach & Wilcox, Hackensack, NJ, for Convery & Convery.

Edward F. Borden, Jr., Westmont, NJ, for William D. Barclay I, David Barclay, Ellen B. Deblois.

Thomas F. Carroll, Hill Wallack, Princton, NJ, for K. Hovnanian Enterprises, Ara Hovnanian.

Kevin J. Curnin, New York City, for Travelers Indemnity Co.

Matthew V. Delduca, David A. Kotler, Dechert Price & Rhoads, Princeton, NJ, for Mellon Bank, N.A., Dechert Price & Rhoads.

Harry R. Hill, Jr., Trenton, NJ, Craig S. Hilard, Stark & Stark, PC, Princeton, NJ, for Toll Brothers, Inc.

Richard James Kravitz, Fox, Rothschild, O'Brien & Frankel, LLP, Lawrenceville, NJ, for Summit Bancorp.

Elizabeth B. Livingston, Bozeman, MO, pro se.

Daren S. McNally, Connell, Foley & Geiser, Roseland, NJ, for Travelers Indemnity Co.

Jonathan Matthew Preziosi, Jamieson, Moore, Peskin & Spicer, Princeton, NJ, for Thomas C. Jamieson.

Lee B. Reimann, East Lansing, MI, pro se.

Stuart P Schlem, Manalapan, NJ, for Leonard Cohen.

Gregg S. Sodini, Buchanan Ingersoll, P.C., Princeton, NJ, for PNC Bank Corp.

Susan B. Walcott, Princeton, NJ, pro se.

Charles Winston, Atlanta, GA, pro se.

Marion Winston, Raleigh, NC, pro se.

Robert Winston, Raleigh, NC, pro se.

## *OPINION*

HOCHBERG, District Judge.

This matter comes before the Court upon motions by defendants Summit Bancorp., PNC Bank Corp., K. Hovnanian Enterprises, Mellon Bank, N.A., Toll Brothers, Inc., Dechert, Price & Rhoads and individual defendants Harry Hill, Esq., Leonard Cohen, Thomas Jamieson, Albert C. Barclay., Jr., Florence Winston, William Barclay, Elizabeth Barclay, Ellen DeBlois, and I. David Barclay to dismiss plaintiffs' complaint in its entirety for failure to plead fraud with particularity, lack of jurisdiction, failure state a claim upon which relief can be granted, failure to join indispensable parties and failure to provide defendants with a short plain statement of the claim showing that the pleader is entitled to relief. *See* Fed.R.Civ.P. 9(b), 12(b)(1), 12(b)(6), 19(a), 8(a), (e). Also before the Court are plaintiffs' (i) cross-motion for partial summary judgment, (ii) motion to strike the reply brief of Mellon Bank and (iii) motion to strike defendant William S. Barclay's motion to dismiss defendant K. Hovnanian Enterprises' motion for sanctions. This Court has reviewed the extensive submissions of the parties, without oral argument pursuant to Fed. R.Civ.P. 78, and for the reasons stated below, the defendants' motions to dismiss will be granted.[1]

---

1. In light of this Court's determination, plaintiffs' (i) cross-motion for partial summary judgment, (ii) motion to strike the reply brief of Mellon Bank (iii) motion to strike defen-

## *STATEMENT OF FACTS*

Plaintiffs, brothers J. Clark Poling and John C. Poling, are grandsons of Isaiah and Gladys Barclay. The gravamen of plaintiffs' Second Amended Complaint is that the 36 defendants named therein have fraudulently and criminally deprived plaintiffs of assets rightfully owed them under the wills of Isaiah and Gladys Barclay. This Court takes judicial notice of the January 13, 1999 Opinion of Hon. Wilkie D. Ferguson, Jr., transferring this case from the United States District Court for the Southern District of Florida to this Court, which sets forth the facts of this case as follows:

On December 13, 1995, an action captioned *Barclay v. Albert C. Barclay, Jr., Trustee* was filed in the Chancery Division of the Superior Court of New Jersey. The state court action was brought against, *inter alia*, J. Clark and John Poling, the same plaintiffs as in the instant federal case, seeking partition and sale of the Chamberlain Farm in East Windsor, New Jersey. On November 13, 1996, K. Hovnanian Companies of Central New Jersey, Inc. was joined as a defendant in the New Jersey state court partition action. On February 24, 1997, the partition action was consolidated with an action brought by K. Hovnanian Companies of Central New Jersey, Inc. seeking specific performance of the contract for purchase of the Chamberlain Farm. On September 24, 1998 the New Jersey Superior Court appointed a partition commissioner for the Chamberlain Farm. The commissioner was given plenary authority to manage the property and effect its sale. The court also empowered the commissioner to negotiate a settlement or other resolution to the litigation between the parties.

On September 23, 1998, one day before the state court appointed a partition commissioner, the instant action was filed in

dant William S. Barclay's motion to dismiss and (iv) motion for summary judgment are denied. Defendant K. Hovnanian's motion for sanctions is also denied.

the United States District Court for the Southern District of Florida by *pro se* plaintiffs J. Clark Poling and John Poling. Plaintiffs claim that they are victims of a 30 year embezzlement scheme to deprive them of a larger inheritance under their grandparents' wills, which allegedly began in 1965 by the alleged wrongful termination of a 1946 stock redemption agreement. Additionally, the plaintiffs claim dissatisfaction with the entire probate proceeding, related distribution of property, and the management and sale of assets (principally New Jersey real estate) under the terms of their grandparents' wills and related trusts.[2] The real property at issue in this action is the Chamberlain Farm, which is the subject of state court proceedings, and the sole thrust of plaintiffs' complaint, dissatisfaction with their inheritance, is the same as in the state court action.

By Order of January 13, 1999, the instant action was transferred from the United States District Court for the Southern District of Florida to this Court. Plaintiffs filed a Second Amended Complaint on May 3, 1999 (hereinafter the "Complaint"). The seventeen-count Complaint alleges the following federal causes of action: (1) violation of the Racketeer Influenced and Corrupt Organizations Act § 1962(c) and (d) ("RICO") (Count I); (2) civil rights violations under 42 U.S.C. § 1983 (Count III); (3) conspiracy to defraud the United States (Count XIV); (4) violation of the Sherman Anti-trust Act (Count XV); (5) violation of the Securities Exchange Act § 10(b) and Rule 10b–5 (Count XVI); and (6) violation of the Securities Exchange Act 20(a) (Count XVII). Plaintiffs also ask this Court to compel arbitration pursuant to 9 U.S.C. § 4 (Count II). The remaining twelve causes of action are founded upon state law and include, *inter alia,* causes of action alleging fraud, malpractice, civil conspiracy,

defamation, negligent and intentional infliction of emotional distress and tortious interference with prospective economic advantage.

The thirty-six defendants in this action include, *inter alia:* fellow beneficiaries under the wills of Isaiah and Gladys Barclay; several, but not all, of the trustees and executors (and their successors) under the wills of Isaiah and Gladys Barclay; several, but not all, of plaintiffs' fellow Barclays Brothers and Barclays Farm partners, including various Barclay family estates; K. Hovnanian Enterprises, Inc., the purported purchaser of the Chamberlin Farm, which is allegedly owned by the plaintiffs and several of the defendants as tenants-in-common; Leonard Cohen, plaintiffs' real estate broker in connection with the sale of the Chamberlin Farm; Thomas C. Jamison, the court-appointed partition commissioner in the New Jersey state court proceedings; Toll Brothers, Inc., a company which was engaged in construction and granted an easement in 1984 with respect to the Chamberlin Farm; several attorneys and law firms that allegedly represented either the plaintiffs or various defendants over the course of the last thirty years; two insurance companies; the New Jersey Department of Transportation and the East Windsor Township.

Several of the defendants have moved to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 9(b) for failure to plead fraud with particularity, Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction, Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action upon which relief can be granted, Fed.R.Civ.P. 19(a) for failure to join necessary parties to this action and Fed.R.Civ.P. 8(a) and (e) for failure to provide defendants with a short plain statement of the claim showing that the pleader is entitled to relief. Given the plaintiffs' *pro se* status, and affording every possible consideration to their 436

---

**2.** Plaintiffs have already inherited hundreds of thousands of dollars which have been de-

pleted.

paragraph, 111 page complaint, this Court painstakingly reviewed the extensive submissions of the parties to discern whether plaintiffs made out even a single cognizable federal claim against a single defendant.[3] They have not. This Court having concluded that plaintiffs have failed to plead fraud with the requisite particularity, have failed to state a federal claim upon which relief can be granted, and it appearing that no diversity jurisdiction exists here as to those claims premised upon state law, plaintiffs' complaint is dismissed in its entirety. The viable aspects of this dispute, if any, are already where they belong: in the New Jersey Superior Court. That is where plaintiffs can obtain and are being given a full and fair airing of all their grievances.

## DISCUSSION

### I. Defendants' 12(b)(6) Motions Attacking Substantive Allegations of Federal Question Claims Alleged in Plaintiffs' Complaint

#### A. Standard of Review of a Fed. R.Civ.P. 12(b)(6) Motion to Dismiss

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). Motions to dismiss under Fed.R.Civ.P. 12(1)(6) for failure to state a cause of action result in a determination on the merits at an early stage of plaintiff's case. *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). As a result, "plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will

be drawn." *Id.* In order to grant a 12(b)(6) motion to dismiss, the Court must find that plaintiffs will be unable to prevail even if they prove all of the allegations in the complaint, basing its decision solely on the legal sufficiency of the complaint. *Id.* Only well-pleaded material allegations are taken as true, however, and conclusions of law or unwarranted deductions of fact are not admitted. *See Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997).

#### B. Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) and (d) (Count I)

##### 1. Elements of a Civil RICO Violation

Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), as against each and every of the thirty-six (36) defendants. Section 1962(c) provides that: "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern racketeering activity or collection of unlawful debt." Subsection (d) of that same statute makes it unlawful for any person to conspire to violate 18 U.S.C. § 1962 subsections (a) through (c). In order to survive the defendants' motions to dismiss the RICO claim, plaintiffs' complaint must adequately set forth the following elements of civil RICO: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L., v. Imrex Company, Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Additionally, plaintiffs must allege that they have been injured in their business or property as a result of the alleged racketeering activity. *Id.*

---

**3.** When plaintiffs are *pro se* litigants the Court has a special obligation to construe the complaint liberally. *United States v. Miller,* 197 F.3d 644, 648 (3d Cir.1999).

A "pattern" of racketeering activity requires at least two predicate acts of racketeering. *See* 18 U.S.C. § 1961(5); *Sedima, S.P.R.L. v. Imrex Company, Inc.,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. Section 1961 provides an exclusive list of those acts that can constitute racketeering activity for the purposes of pleading violation of RICO. *See Annulli v. Panikkar,* 200 F.3d 189, 199 (3d Cir.1999). The predicate acts that plaintiffs here rely upon in attempting to plead violation of RICO are mail and wire fraud.[4] (*See e.g.,* Complt. ¶¶ 9, 36, 40, 85, 229).

### 2. Failure to Plead Fraud with Particularity

Where plaintiffs allege mail and wire fraud as the basis of a RICO violation, the allegations of fraud must comport with the Fed.R.Civ.P. 9(b)[5] heightened pleading standard. *Saporito v. Combustion Engineering Inc.,* 843 F.2d 666, 673 (3d Cir.1988), *vacated on other grounds,* 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989). To plead mail or wire fraud with sufficient particularity, plaintiffs must "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). To satisfy the pleading requirement, plaintiffs may plead the specific conduct alleged to be fraudulent along with the "date, place and time" that the alleged fraud occurred or use some "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* Vague or conclusory allegations of fraud will not survive a motion to dismiss. *In re Burlington Coat Factory Securities Litig.,* 114 F.3d 1410, 1418 (3d Cir.1997). Moreover, allegations that generally allege fraud as against multiple defendants, without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed do not satisfy Rule 9(b). *See Mayor & Council of Borough of Rockaway v. Klockner & Klockner,* 811 F.Supp. 1039, 1060 (D.N.J.1993).

Notwithstanding the explicit order of the Court on April 15, 1999, directing plaintiffs to complete the RICO Case Statement provided for in Appendix O of the United States District Court Rules for the District of New Jersey, plaintiffs have failed to file an adequate statement in compliance with the Order of this Court. Instead, they merely sent a cursory form that did nothing more than refer back to the same paragraphs of their Complaint which were deficient in the first place. Plaintiffs' conduct defied Magistrate Judge Cavanaugh's Order to file a RICO Case Statement.[6]

Despite more than ample opportunity offered by federal courts in Florida and

---

**4.** As against Florence Winston and Albert C. Barclay, Jr. plaintiffs allege acts other than mail and wire fraud in an attempt to establish a civil RICO violation. (Complaint ¶ 289.) These allegations are likewise infirm. First "theft by deception" is not a predicate act. *Annulli v. Panikkar,* 200 F.3d 189, 199 (3d Cir.1999). And, if it were, it would require pleading with particularity which is not satisfied here. *See infra* Section I.B.2. Second, plaintiffs' wholly conclusory allegations regarding the defendants' use of barn paneling and stained glass windows fail to make out a pattern of racketeering. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1411–1412 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

Finally, plaintiffs' claims are time-barred. *See infra* Section I.B.3.

**5.** Fed.R.Civ.P. 9(b) states in pertinent part that: "In all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity."

**6.** Moreover, the RICO Case Statement prepared by plaintiffs at the request of the United States District Court for the Southern District of Florida (prior to the transfer of this case) was not submitted in response to Judge Cavanaugh's April 15, 1999 Order. While plaintiffs ultimately submitted the earlier case statement in response to the defendants' motions to dismiss, it is equally deficient.

New Jersey, plaintiffs here have failed to allege mail and wire fraud with sufficient particularity to "place the defendants on notice of the precise misconduct with which they are charged," *Seville*, 742 F.2d at 791, and have failed to "adequately describe[ ] the nature and subject of the alleged misrepresentation[s]" committed by the 36 defendants (*id.*). In sweeping terms, the Complaint accuses various defendants of "knowingly and willfully devis[ing] a scheme" (complt.¶¶ 128, 129, 132, 133, 231), forging and fabricating documents (complt.¶¶ 143, 145, 191, 193, 194) and breaching their fiduciary duties to plaintiffs (complt.¶¶ 49, 103). Additionally, plaintiffs assert that "[d]iscovery will prove that each and every letter or fax written and sent over the past twenty-five years via the U.S. mail or interstate phone lines with the heading 'Albert C. Barclay, Jr.,—Counselor at Law' regarding legal services ... was a predicate act of wire and mail fraud in violation of 18 U.S.C. § 1343" (complt.¶ 36) and that all 36 defendants "had knowledge of the ... fraud ... and willfully participated ... using the United States mail and wires to do so." (Complt.¶ 36.) Plaintiffs' allegations plainly fail to provide the particularity required by Rule 9(b). Plaintiffs' complaint represents precisely what the heightened pleading requirement is meant to protect against—"spurious charges of immoral and fraudulent behavior." *Seville*, 742 F.2d at 791.

Plaintiffs' repeated failure to meet the heightened pleading standards of Rule 9(b) requires dismissal of their RICO claims as against each of the defendants.

### 3. *Limitations Period and the Civil RICO Accrual Rule*

Even if their allegations of fraud had been pleaded with particularity, plaintiffs' RICO claims fail as untimely. While the RICO statute provides for private civil causes of action, the statute itself does not specify a limitations period. To fill that void, the Supreme Court ultimately adopted for civil RICO claims the uniform four-year limitations period applicable to civil enforcement actions under the Clayton Act (15 U.S.C. § 15b). *Agency Holding Corp. v. Malley–Duff & Assoc. Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). However, that case did not present the Supreme Court with the opportunity to decide when civil RICO actions accrue. The Circuit Courts of Appeals were left to adjudicate the accrual issue, resulting in a circuit split that articulated at least three distinct accrual rules.

In *Keystone Insurance Co. v. Houghton*, 863 F.2d 1125 (3d Cir.1988), the Third Circuit announced the "injury and pattern discovery" rule. Under the Third Circuit's rule, a claim for civil RICO accrued when plaintiff knew or should have known that each element of a civil RICO claim existed—that he was injured, that defendant was the source of that injury and that a pattern of activity prohibited by RICO had caused this harm. *Keystone*, 863 F.2d at 1129–1130. Incorporated into the Third Circuit's rule was a provision, which became known as the "last predicate act" rule, that started the limitations period running anew upon each new injury and after each new predicate act that was part of the same pattern of racketeering activity. *Keystone*, 863 F.2d at 1130. Other Courts of Appeals adopted the "injury and pattern discovery" rule without the "last predicate act" rule.[7] Still other Circuits chose the "injury discovery" rule, which holds that a civil RICO cause of action accrues when the plaintiff discovers or should have discovered his injury.[8]

---

7. In addition to the Third Circuit, the Eighth, Tenth and Eleventh Circuits followed the injury and pattern discovery rule prior to the Supreme Court's decision in *Rotella*. *See Association of Commonwealth Claimants v. Moylan*, 71 F.3d 1398, 1402 (8th Cir.1995); *Bi-* vens Gardens Office Building, Inc. v. Barnett Bank, 906 F.2d 1546, 1554–1555 (11th Cir. 1990), *cert. denied*, 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991); *Bath v. Bushkin, Gaims, Gaines & Jonas*, 913 F.2d 817, 820 (10th Cir.1990).

In *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997), the Supreme Court began to address the issue of when a civil RICO cause of action accrues. The Supreme Court rejected the Third Circuit's "last predicate act rule," which rule had effectively permitted the plaintiff, upon the commission of a separate new overt act, to recover for the injury caused by old overt acts outside the limitations period. The Court found that "the plaintiff cannot use a new independent predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Klehr*, 521 U.S. 179, 189, 117 S.Ct. 1984, 1991.

In *Klehr*, the Supreme Court declined to heal the split among the circuits regarding precisely when a civil RICO action accrues and the Circuits' varying accrual rules remained the law.[9] When it next had occasion to address the issue, the Third Circuit confirmed that the injury and pattern discovery rule, as amended by *Klehr*, remained the law of this Circuit. *See Annulli v. Panikkar*, 200 F.3d 189, 195 (3d Cir.1999).

Three months ago, the Supreme Court overruled the "injury and pattern discovery rule." *Rotella v. Wood*, —— U.S. ——, 120 S.Ct. 1075, 1080–1081, 145 L.Ed.2d 1047(2000). The Supreme Court stated:

"We think the minority injury and pattern discovery rule unsound for a number of reasons. We start with the realization that under the provision recognizing the possibility of finding a pattern of racketeering in predicate acts 10 years apart, even an injury occurrence rule unsoftened by a discovery feature could in theory open the door to proof of predicate acts occurring 10 years before injury and 14 years before commencement of litigation. A pattern discovery rule would allow proof of a defendant's acts even more remote from time of trial and, hence, litigation even more at odds with the basic policies of all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities."

In rejecting the injury and pattern discovery rule, however, the Supreme Court declined to specifically articulate a uniform rule governing the accrual of civil RICO claims. *Id.*, 120 S.Ct. at 1080 n. 2. Instead, the Supreme Court indicated that at least two accrual rules remained viable—the pure injury discovery rule, one of the three rules originally articulated by the Circuit Courts, and the pure injury occurrence rule suggested by Justice Scalia's concurrence in *Klehr*. *Id.; see supra* note 9.

The Court of Appeals for the Third Circuit has not addressed this issue since the Supreme Court rejected the "injury and pattern discovery" rule in *Rotella*. This Court thus draws upon Supreme Court precedent, the analytical reasoning of the Third Circuit cases and upon cardinal principals of law to articulate an accrual rule.

This Court's analysis begins with *Rotella*, in which the Supreme Court stated that "[f]ederal courts ... generally apply a discovery accrual rule when a statute is silent on the issue, as civil RICO is here" and

---

**8.** The First, Second, Fourth, Seventh and Ninth Circuits follow the injury discovery rule. *See Grimmett v. Brown*, 75 F.3d 506, 511 (9th Cir.1996), *cert. dismissed*, 519 U.S. 233, 117 S.Ct. 759, 136 L.Ed.2d 674 (1997); *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1464–1465, (7th Cir.1992); *Rodriguez v. Banco Central*, 917 F.2d 664, 665–666 (1st Cir. 1990); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989); *Pocahontas Supreme Coal Co., v.*

*Bethlehem Steel Corp.*, 828 F.2d 211, 220 (4th Cir.1987); *see also Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1489–1490 (C.A.D.C.1989).

**9.** In his concurrence, Justice Scalia introduced yet another alternative accrual rule— pure injury occurrence. *Klehr*, 521 U.S. at 197 n. 1, 117 S.Ct. at 1994 n. 1 (Scalia, J., concurring).

that "discovery of the injury ... is what starts the clock." *Rotella,* —— U.S. ——, 120 S.Ct. at 1081. Recognizing that "a pattern of predicate acts may well be complex, concealed, or fraudulent," the Supreme Court maintained that the justification for a discovery rule does not extend beyond discovery of the injury. *Id.,* 120 S.Ct. at 1081.

This Court's analysis continues with Third Circuit case law. Although this Circuit's "injury and pattern discovery" rule is no longer viable, the Third Circuit's reasoning in articulating that rule is instructive. In addressing when a civil RICO cause of action accrues, the Third Circuit has focused on RICO's unique elements and the Supreme Court's emphasis on the pattern element as the heart of a RICO claim. *Keystone Insurance Co. v. Houghton,* 863 F.2d 1125, 1128–1129, 1133. The simple (or pure) discovery rule—accrual upon discovery of the injury—has been expressly rejected by the Third Circuit as failing to account for the unique aspects of a civil RICO violation, in particular the pattern element. *See Keystone,* 863 F.2d at 1133–1134. While "[t]he simple discovery rule is an effective rule where the facts indicate that there was one victim and each element and all predicate acts of a RICO violation were present at the same time," *Keystone,* 863 F.2d at 1133, the simple discovery rule would be unfair when the second RICO predicate act, necessary to establish the pattern, occurs more than four years after the plaintiff's injury.[10] *Id.*

Additionally, as the Supreme Court recognized in *Rotella,* —— U.S. at —— n. 4, 120 S.Ct. at 1083 n. 4, it is a "cardinal principle that a limitations period does not begin to run until the cause of action is complete." *See Rawlings v. Ray,* 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605 (1941); *see also United States v. Lindsay,* 346 U.S. 568, 569, 74 S.Ct. 287, 98 L.Ed. 300 (1954); *Clark v. Iowa City,* 87 U.S.(20 Wall.)583, 589, 22 L.Ed. 427 (1874). While the Supreme Court expressly declined to decide whether civil RICO permits a cause of action when the second predicate act follows the injury or what limitations accrual rule might apply in that case, *Rotella,* —— U.S. ——, 120 S.Ct. at 1083 n. 4, that issue was clearly central to the Third Circuit's analysis. *See Keystone,* 863 F.2d at 1131–1134.

■ This Court will apply the accrual rule most closely in accord with Supreme Court precedent and the Third Circuit's analytical framework. In light of the Third Circuit's longstanding application of a discovery accrual rule for civil RICO claims, and guided by the Supreme Court's ruling in *Rotella,* this Court holds that plaintiffs' civil RICO cause of action accrued when all of the elements of a civil RICO cause of action existed, whether or not discovered, and plaintiffs knew of the existence and source of their injury or should, with the exercise of reasonable diligence, have known of their injury. This accrual rule comports with the Supreme Court precedent in *Klehr* and *Rotella,* and yet recognizes the Third Circuit's emphasis on the unique elements and statutory purpose of civil RICO.[11]

■ Plaintiffs' claims are time-barred if they accrued more than four years prior to the filing date of this action, unless the statute of limitations is subject to tolling. Plaintiffs here allege a continuous injury stemming from the disposition of their grandparents' estates in the 1970s and

**10.** Congress expressly contemplated that predicate acts could occur more than four years apart. *See* 18 U.S.C. § 1961(5) (setting forth a predicate act interval of up to ten years to establish a pattern).

**11.** This rule does not conflict with the Supreme Court's holding in *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997). As articulated by this Court, the statute of limitations does not begin to run in the first instance until all of the elements of the civil RICO claim exist. Thus a single injury that occurs prior to the predicate act that establishes the pattern will be within the statute of limitations.

continuing for nearly three decades. The acts upon which they rely in an attempt to plead a civil RICO claim occurred primarily in the 1970s. Plaintiffs' allegations make clear that they knew or should have known of the existence and source of their injuries, if any, decades before they filed this action on September 23, 1998. By way of example, this Court finds that, *inter alia*, the following events gave rise to a duty on the part of plaintiffs to diligently inquire further into their rights as beneficiaries of their grandparents' estates and possible fraud, if any, stemming therefrom: on November 22, 1972, when the First and Final Accountings in the matter of the Estate of Isaiah Barclay were entered by the New Jersey probate court (complt.¶ 123); in 1974 and 1978, when Mellon Bank's accounts and schedules of distribution for the trust assets from the estate of Isaiah Barclay were prepared, presented, reviewed and approved by the Pennsylvania probate court (complt.¶ 294); in July 1977 when plaintiffs first made inquires to attorneys for the estate of Gladys Barclay (complt.¶ 87); in 1978, when issues with respect to disposition of assets under the will of Gladys S. Barclay were litigated in New Jersey by members of the Barclay and Poling families, including plaintiffs' mother; on plaintiffs' respective 21st birthdays in 1979 and 1981, when they received $10,000 payments out of the estate of Isaiah Barclay (complt.¶¶ 88, 104); on September 8, 1981, when plaintiffs each received a payment in the amount of $70,000 from their individual trusts and cursorily inquired into their trust assets (complt.¶¶ 90, 98, 100, 102); on December 9, 1981 when plaintiffs received

documentation regarding their respective accounts (complt.¶ 91); in 1981, and no later than 1992, when the allegedly unlawful options were made (complt.¶ 230); in 1988, when plaintiffs received payments on two multi-million dollar sales of farms in which they had an interest (complt.¶ 105).

Plaintiffs are not entitled to any tolling of the limitations period on the basis of fraudulent concealment. Plaintiffs do not allege that they undertook diligent efforts to inquire into the disposition of their grandparents' assets, an inquiry that would have led to discovery of their injuries, if any, decades ago. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) ("a plaintiff who is not reasonably diligent may not assert fraudulent concealment" in a RICO action). Plaintiffs assertion that they "have only recently discovered the criminal pattern" is irrelevant in light of Supreme Court's holding in *Rotella.* And, their assertion that "they have only recently discovered the true facts" cannot revive the statute of limitations and overcome three decades of inaction and complacency by plaintiffs. Having made various cursory inquires about the estates' assets, plaintiffs cannot then do nothing for two decades and wait for information to fall into their laps.[12] *Klehr,* 521 U.S. at 194, 117 S.Ct. at 1993.

Plaintiffs' civil RICO claims are time-barred under both the accrual rule established by this Court, as well as under any other recognized accrual rule that has not been declared unsound by the Supreme Court.[13] Having found that plaintiffs are

---

**12.** Additionally, plaintiffs' allegations of fraudulent concealment are themselves not sufficiently particular to toll the RICO four year limitations period. *See Mayor and Council of Borough of Rockaway v. Klockner & Klockner,* 811 F.Supp. 1039, 1060 (D.N.J. 1993).

**13.** Under any of the remaining accrual rules—the rule applied by this Court, pure injury discovery, or pure injury occurrence—plaintiffs' claims are untimely. Even under

the old injury and pattern discovery rule, plaintiffs' claims fail as untimely. Moreover, the accrual rule as this Court has articulated it today is the most lenient accrual rule among those previously articulated by the Circuit Courts of Appeals and not declared unsound by the Supreme Court. Thus, no matter what rule is ultimately adopted by the Court of Appeals for the Third Circuit in the aftermath of the Supreme Court's decision in *Rotella,* the outcome here remains the same.

out of time and have failed to plead fraud with the requisite particularity, this Court does not reach the other flaws in plaintiffs' RICO claims.

### C. *Violation of 42 U.S.C. § 1983 (Count III)*

To state a civil rights claim under 42 U.S.C. § 1983, plaintiffs must allege that: (1) he was deprived of a right secured by the Constitution or the laws of the United States; and that (2) the deprivation was caused by someone acting under color of state law. *Flagg Bros. v. Brooks,* 436 U.S. 149, 155–157, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). A private actor may be deemed to have acted under color of state law only where his or her conduct is "fairly attributable to the state." *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982). Plaintiffs' conclusory allegations that the individual defendants have colluded with the East Windsor Township and the New Jersey Department of Transportation to "deprive plaintiffs of partnership property interests and/or liberty interests under color of statute, ordinance, regulation, or usage" (complt.¶¶ 363, 364) are insufficient to state a claim for violation of section 1983 because plaintiffs have alleged no conduct of the individual defendants' that is "fairly attributable to the state." *Rendell–Baker,* 457 U.S. at 838, 102 S.Ct. at 2770. Moreover, with respect to state defendants East Windsor Township and the New Jersey Department of Transportation, plaintiffs have alleged nothing which can be construed as a deprivation of a right secured by the Constitution or the laws of the United States. A complaint by plaintiffs that their inheritances under their grandparents' wills is insufficient or that property under those wills has been allocated in a manner not to their liking does not constitute a cause of action that Section 1983 was intended to redress.

### D. *Conspiracy to Defraud the United States and the IRS (Count XIV)*

Plaintiffs also attempt to charge various defendants with defrauding the United States out of tax revenue. Plaintiffs do not have standing to raise this claim. *See Linda R.S v. Richard D.,* 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *see generally Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (standing doctrine prohibits a litigant from raising another party's rights); *Warth v. Seldin,* 422 U.S. 490, 498–499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (jurisdiction can only be invoked when plaintiff himself has suffered threatened or actual injury).

### E. *Violation of the Sherman Act (Count XV)*

The property and actions upon which plaintiffs premise their claim for violation of the Sherman Act is at the heart of the partition action already pending in New Jersey state court. Since district courts are federal courts of original jurisdiction, this Court is convinced that any review of the Chamberlin Farm's disposition, and in particular the New Jersey Superior Court's appointment of a partition commissioner, would be an inappropriate review of the state court's actions over which this Court has no jurisdiction. Thus this Court abstains from deciding plaintiffs' antitrust claim. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Abstention in such a case is "necessary to . . . limit federal court review of state decisions to the avenue provided for such by Congress." *See E.B. v. Verniero,* 119 F.3d 1077, 1091 (3d Cir.1997), *cert. denied,* 522 U.S. 1109, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). If plaintiffs wish to challenge the partition of the Chamberlain Farm or the performance of the partition commissioner, Thomas Jamieson, they should do so in the

pending state court action. *See Verniero,* 119 F.3d at 1091 ("If a litigant resorts to a state court and suffers an adverse judgment, a lower federal court must respect that judgment unless and until it is overturned.") Having abstained, this Court does not reach the other flaws in plaintiffs' Sherman Act claim.

**F. Violation of § 10(b) of the Exchange Act and Rule 10(b)–5 and § 20(a) of the Exchange Act (Counts XVI and XVII)**

It is axiomatic that violation of Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder must occur in connection with the purchase or sale of securities. 15 U.S.C. § 78j(b); *see also Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 734–735, 754–755, 95 S.Ct. 1917, 1925, 1934, 44 L.Ed.2d 539 (1975). Indeed, to establish liability under Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder, plaintiff must show: (1) that defendant made an untrue statement of material fact or failed to make a statement of material fact; (2) that the conduct occurred in connection with the purchase or sale of a security; (3) that the defendant made the statement or omission with scienter; and (4) that plaintiff relied on the misrepresentation and sustained damages as a proximate result of the misrepresentation. *Newton v. Merrill, Lynch, Pierce, Fenner & Smith,* 135 F.3d 266, 269 (3d Cir.), *cert. denied,* 525 U.S. 811, 119 S.Ct. 44, 142 L.Ed.2d 34 (1998). Here, there is no allegation that plaintiffs purchased or sold securities or of fraud in connection therewith.[14] As a result, plaintiffs fail to state a cause of action under section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder.

To state a claim under the Securities Exchange Act § 20(a), imposing liability on control persons under the Act, plaintiffs must allege (1) a primary violation; (2) scienter; and (3) control of a primary violator. *See Komanoff v. Mabon, Nugent & Co.,* 884 F.Supp. 848, 859 (S.D.N.Y. 1995). Plaintiffs' claim for violation of the Securities Exchange Act section 20(a) fails because they have failed to state any primary violations of the securities laws.

**G. Order Directing Arbitration Under 9 U.S.C. § 4 (Count II)**

It is well-settled that Section 4 of the Federal Arbitration Act does not itself confer federal question jurisdiction. 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . ."); *see also Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Absent an individual basis of federal subject matter jurisdiction, an application under this section may not be considered by this Court. Since neither federal question nor diversity jurisdiction here exists, plaintiffs' claim to compel arbitration is dismissed.

**II. This Court Lacks Subject Matter on the Basis of Diversity of Citizenship**

**A. Standard of Review of a Fed. R.Civ.P. 12(b)(1) Motion to Dismiss**

In evaluating a motion to dismiss under 12(b)(1) for lack of subject matter

---

**14.** Although the Complaint contains allegations regarding the purchase of securities by Isaiah D. Barclay in 1965 (complt.¶ 162) and contends that the same purchase contravened the 1946 Stockholder's Agreement (complt. ¶ 160), plaintiffs do not allege material misstatements or omissions in connection therewith, they do not make any assertions of reliance on any material misstatement or omission made in connection therewith, they do not allege scienter, and they do not allege damage to themselves as a result of reliance on any material misstatement or omission. Moreover, plaintiffs lack standing to assert a securities fraud claim in connection with their grandfather's alleged malfeasant purchase of stock in 1965. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. at 734–735, 754–755, 95 S.Ct. at 1925, 1934.

jurisdiction, the Court must first determine whether defendant's motion attacks the complaint as deficient on its face, or whether defendant's motion attacks the existence of subject matter jurisdiction in fact. *Mortensen,* 549 F.2d at 891. Where defendant's 12(b)(1) motion facially attacks the complaint, the Court must take all allegations in the complaint as true. *Id.* Where however, defendant attacks the Court's subject matter jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations and the Court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in fact. *Id.* at 891. Plaintiff bears the burden of proof that subject matter jurisdiction does in fact exist. *Id.*

Defendants here challenge jurisdiction in fact as to those counts premised upon diversity of citizenship. As a result, the Court may weigh the evidence to determine whether subject matter jurisdiction in fact exists. The defendants' challenge to plaintiffs' allegation of diversity jurisdiction is premised upon plaintiffs' failure to join necessary parties who, if properly joined, would destroy diversity. As a federal court of limited jurisdiction, this Court, in addition, has its own independent obligation to address questions of subject matter jurisdiction. *See Meritcare Inc. v. St. Paul Mercury Insurance Co.,* 166 F.3d 214, 217 (3d Cir.1999).

### B. *Plaintiffs Have Failed to Adequately Plead Diversity Jurisdiction*

"It is ... well established that when jurisdiction depends upon diverse citizenship the absence of sufficient averments or of facts in the record showing such required diversity of citizenship is fatal and cannot be overlooked by the court, even if the parties fail to call attention to the defect, or consent that it may be waived." *Carlsberg Resources Corp. v. Cambria Savings and Loan Association,* 554 F.2d 1254, 1256 (1977) (citing *Thomas v. Board of Trustees,* 195 U.S. 207, 211, 25 S.Ct. 24, 49 L.Ed. 160 (1904)). In order to state subject matter jurisdiction on the basis of diversity of the parties, plaintiffs must affirmatively plead the citizenship of the individual defendants. *See Chemical Leaman Tank Lines, Inc. v. Aetna Casualty Ins. & Surety Co.,* 177 F.3d 210, 222 n. 13 (3d Cir.1999); *see also American Motorists Ins. Co. v. American Employers' Ins. Co.,* 600 F.2d 15 (5th Cir.1979). Corporate entities have dual citizenship for purposes of diversity and thus plaintiffs must affirmatively plead both the state of incorporation and the corporation's principal place of business. 28 U.S.C. § 1332(c); *see also Carolina Casualty Ins. Co., v. Insurance Co. of North America,* 595 F.2d 128, 130 n. 1 (1979). It is only when these facts are affirmatively pleaded that the Court can properly determine whether complete diversity of the parties in fact exists and thus whether the Court has jurisdiction to adjudicate the matter.

Here, plaintiffs' allegations are inadequate in several respects that prove fatal to their assertion of diversity jurisdiction. First, plaintiffs do not plead their own citizenship. Second, plaintiffs fail to plead the citizenship of individual defendants Ara K. Hovnanian, Leonard Cohen, Thomas Jamieson, Albert C. Barclay, Jr., Florence Winston, Robert Winston, Charles Winston, Marion Winston, Elizabeth Livingston, Lee Reimann, Albert Barclay III, Margaret Barclay, Edward S. Barclay, Jr., Susan B. Walcott, William S. Barclay, I. David Barclay, Ellen Beblois, Jack Huff, Esq., Bill Moran, Esq., and Harry Hill, Jr., Esq. Third, plaintiffs have failed to plead the principal place of business of corporate defendants Toll Brothers, Inc., Mellon Bank, N.A., and PNC Bank, N.A. Fourth, as respects defendants Law Firm of Jack Huff and Bill Moran, Dechert Price & Rhoads, C.N.A. Insurance Company and Convery & Convery, plaintiffs have failed to plead whether these entities are corporations or partnerships (which would require showing diversity of each of the partners) or some other type of entity, and the

Court is thus unable to determine the adequacy of plaintiffs' assertions. Finally, plaintiffs make no averments regarding citizenship with respect to the Estates of Albert C. Barclay, and Marion Barclay and William S. Barclay Trust and their trustees in order to establish whether diversity exists.

 It is the plaintiffs' burden to adequately plead diversity jurisdiction. *See* Fed.R.Civ.P. 8(a)(1); *Chemical Leaman Tank Lines, Inc.*, 177 F.3d at 222. They have known of the deficiencies in their allegations since Hon. Wilkie D. Ferguson, Jr. issued his January 13, 1999 Order transferring the case to this Court and stated that "Plaintiffs fail to allege residency or citizenship of 13 defendants." Plaintiffs' allegation that "no plaintiff party is from the same state as any defendant party" (complt.¶ 5) is insufficient to show diversity jurisdiction absent an averment of the particular state of which the parties are citizens. *See e.g., Muscle Shoals Associates, Ltd. v. MHF Insurance Agency, Inc.*, 792 F.Supp. 1224, 1227 (D.C.Ala. 1992). No matter how liberally this Court construes *pro se* plaintiffs' complaint, the lack of diversity jurisdiction here cannot be overcome. Since no basis for subject matter jurisdiction exists, this action must be dismissed in its entirety.

### C. *Plaintiffs Have Failed to Join Necessary Parties Under Fed. R.Civ.P. 19(a)*

 Plaintiffs are out of time to seek amendment of their complaint as of right, and would be required to seek leave of this Court to amend the Second Amended Complaint at this juncture. Fed.R.Civ.P. 15(a). Although leave to replead is generally freely given, such an amendment would be futile here because this Court agrees with defendants that plaintiffs have failed to join four necessary parties to this action: Elizabeth Poling, Edward Poling, E. Barclay Poling and Daniel Poling. *See* Fed.R.Civ.P. 19(a)(2). It is this Court's understanding that joinder of these parties, whether as plaintiffs or as defendants, would deprive the Court of subject matter jurisdiction. Equity and good conscience require the Court to dismiss this action for failure to join these additional individuals. Fed.R.Civ.P. 19(b).

Fed.R.Civ.P. 19(a) requires joinder of all "necessary" parties to an action. The Rule provides for joinder of individuals in the action if "(1) in the person's absence complete relief cannot be accorded among those already parties; (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest."

As beneficiaries of the estates of Isaiah and Gladys Barclay, Elizabeth Poling, (plaintiffs' mother) and Daniel Poling and E. Barclay Poling (plaintiffs' brothers) are necessary parties to this action. *See e.g., Tick v. Cohen*, 787 F.2d 1490, 1494 (11th Cir.1986); *Byrd v. Corestates Financial Corp.*, 1994 WL 622103 (E.D.Pa. Nov.9, 1994); *Hinsdale v. Farmers National Bank & Trust Co.*, 93 F.R.D. 662, 664–665 (N.D.Ohio 1982). Additionally, as co-trustees of trusts at issue in this case, both Elizabeth Poling and Edward Poling are necessary party defendants in this action.[15] *See e.g., Carey v. Brown*, 92 U.S. 171, 172, 23 L.Ed. 469 (1875); *Hinsdale*, 93 F.R.D.

---

**15.** In their capacities as co-trustees, the Court finds that Elizabeth and Edward Poling are necessary party defendants, not necessary party plaintiffs. *Compare Godfrey v. Kamin*, 1999 WL 756151 (N.D.Ill. Sept.13, 1999); *Hinsdale*, 93 F.R.D. at 665 (plaintiff's mother, co-trustee with defendant bank, was a necessary party), *with Byrd*, 1994 WL 622103, *3 (suit for restoration of trust belongs to beneficiary and thus trustee is not necessary party) (citing *Lynch v. Porter*, 446 F.2d 225, (8th Cir.1971)).

at 665. Finally, all four individuals and/or their trusts are partners in the Barclay Brothers and Barclay Farms partnerships. Thus here, where plaintiffs seek to assert claims against other partners regarding diminution of their interest in partnership property, all of the partners are necessary parties to the action. *See e.g., DM II, Ltd. v. Hospital Corp. of America*, 130 F.R.D. 469, 472 (N.D.Ga.1989); *Hagstrom v. Breutman*, 572 F.Supp. 692, 701–702 (N.D.Ill.1983).

This Court can properly infer that joinder of Elizabeth Poling, Edward Poling, E. Barclay Poling and Daniel Poling will destroy diversity jurisdiction.[16] Where, as here, joinder of parties will deprive the Court of subject matter jurisdiction, Fed. R.Civ.P. 19(b) provides that "the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed." The factors that the Court must consider in making this determination are as follows: (1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which relief or judgment can be shaped so as to lessen or avoid prejudice; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed.R.Civ.P. 19(b). Having weighed the Rule 19(b) factors, this Court has determined in equity and good conscience that this action should be dismissed for nonjoinder of Elizabeth Poling, Edward Poling, E. Barclay Poling and Daniel Poling. Plaintiffs already have an alternative forum to address their grievances, in which all parties may be joined. Notably, these four individuals are parties to the state court proceedings.

## III. *Fed.R.Civ.P. 8(a) and (e)*

This Court feels compelled to comment on *pro se* plaintiffs' 111 page, 436 paragraph complaint, which casts stones at virtually every family member, lawyer, court appointee[17], town or county whom their grandparents' estates have encountered in any way, shape or form. Plaintiffs amass all in a giant, unarticulated web of conspiracy and deceit. In every case where the reputations of respectable individuals and companies are at stake, it is critical that defendants be afforded a clear statement of the allegations against them such that each defendant may adequately put forth a defense. While the Court will extend its every courtesy, this is no less the case where plaintiffs appear *pro se*. In this case, the volume of plaintiffs' diatribe does not substitute for an actionable claim.

Failure to afford defendants a "short plain statement of the claim showing that the pleader is entitled to relief," Fed. R.Civ.P. 8(a), and failure to be "simple, concise, and direct" with respect to each averment, Fed.R.Civ.P. 8(e), have resulted in dismissal of complaints in their entirety. *See e.g., Hatch v. Reliance Ins. Co.*, 758

---

**16.** Fed.R.Civ.P. 19(c) requires that plaintiffs state the names of persons described in Rule 19(a)(1)–(2) who are not joined and the reasons that they have not been joined. Plaintiffs have not adequately done so here. As such, this Court may infer that joinder would destroy diversity jurisdiction. *See Hinsdale*, 93 F.R.D. at 665. Additionally, plaintiffs do not refute defendants' contention that joinder of Elizabeth Poling, Edward Poling, E. Barclay Poling and Daniel Poling as necessary parties will destroy diversity.

**17.** Particularly troublesome to this Court is plaintiffs' addition, in their Second Amended Complaint, of Thomas Jamieson, the court-appointed partition commissioner in the state court proceedings. Together with the other 35 defendants, the recently-appointed Mr. Jamieson is accused of being part of the 30 year RICO scheme. Mr. Jamieson clearly has absolute qualified judicial immunity in this case and the Complaint must be dismissed as against him for that additional reason. *See Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir.), *cert. denied*, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969); *see generally Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). In addition to seriously undermining plaintiffs veracity, the addition of Mr. Jamieson borders on sanctionable. Plaintiffs' *pro se* status rescues them from the brink of sanctions by this Court.

**518**

F.2d 409, 415 (9th Cir.), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985).

In an effort to streamline the pleadings, Hon. Dennis M. Cavanaugh ordered that plaintiffs complete a RICO Case Statement. Plaintiffs contumacious refusal to provide this Court with the ordered RICO Case Statement and their insistence that the confused and oft incomprehensible allegations of their complaint did not require them to comply with the Court's Order likewise warrant dismissal of plaintiffs' complaint. However, as plaintiffs' *pro se* status affords them more latitude in our judicial system regarding their pleadings, the Court does not base its dismissal here on these grounds.

### IV. *State Law Claims*

Having found that plaintiffs have failed to state a federal cause of action and that this Court lacks diversity jurisdiction to hear plaintiffs' state law claims, this Court declines to exercise jurisdiction over such claims and they are dismissed without prejudice to plaintiffs' right to plead them in state court. 28 U.S.C. § 1367(c)(3).

This Court also takes note of the multiple judicial proceedings pending in New Jersey State Court concerning many of these parties and the very same property here at issue. This Court is convinced that plaintiffs' rights, if any, will be adequately protected in the state court proceedings. Even if plaintiffs were able to adequately plead diversity jurisdiction, which this Court believes they cannot, the most serious consideration would be given to abstaining with respect to plaintiffs' state law claims.

### CONCLUSION

For the reasons stated above, defendants' motions to dismiss for failure to plead fraud with particularity, failure to state a cause of action, lack of jurisdiction over plaintiffs state law claims, and failure to join indispensable parties. *See* Fed. R.Civ.P. 9(b), 12(b)(6), 12(b)(1), 19(a), (b).

Plaintiffs' (i) cross-motion for summary judgment (ii) motion to strike the reply brief of Mellon Bank and (iii) motion to strike defendant William S. Barclay's motion to dismiss are denied. Defendant Hovnanian's motion for sanctions is also denied. An appropriate order will issue.